09-0281-cr
*United States v. Basciano*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

August Term, 2009

(Argued: October 27, 2009)                    Decided: March 23, 2010)

Docket No. 09-0281-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

VINCENT BASCIANO, ALSO KNOWN AS VINNY GORGEOUS,
ALSO KNOWN AS VINNY FROM THE BRONX,

*Defendant-Appellant.*

---

Before:

WALKER, MCLAUGHLIN, and RAGGI, *Circuit Judges.*

---

Defendant Vincent Basciano, previously convicted in the Eastern District of New York on conspiratorial and substantive racketeering charges relating to his participation in the Bonanno organized crime family, appeals from orders denying (1) dismissal on double jeopardy grounds of those counts of an indictment pending in the Eastern District (Garaufis, *Judge*) again charging him with substantive racketeering in conducting the affairs of the

1

Bonanno crime family, see 18 U.S.C. § 1962(c), as well as conspiracies to commit murders in aid of racketeering, see id. § 1959(a)(5); and (2) reconsideration of the decision denying dismissal. We reject defendant's double jeopardy challenge to the charges of conspiracy to murder in aid of racketeering as without merit. At the same time, we conclude that defendant's prosecution on a successive substantive racketeering charge, as pleaded in the pending indictment, is barred by double jeopardy. That charge, therefore, must be dismissed.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

---

GEORGE GOLTZER (Jane Simkin Smith, Millbrook, New York, and Richard Jasper, New York, New York, *on the brief*), New York, New York, *for* Defendant-Appellant.

TARYN A. MERKL, Assistant United States Attorney (David C. James, John D. Buretta, Nicole Argentieri, Cristina Posa, Assistant United States Attorneys, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for* Appellee.

---

REENA RAGGI, *Circuit Judge*:

Defendant Vincent Basciano is presently serving a sentence of life imprisonment as a result of conviction after jury trials in 2006 and 2007 in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) on charges of conspiratorial and substantive racketeering relating to his participation in the Bonanno organized crime

family ("Bonanno crime family" or "Family").[1] See Judgment, United States v. Basciano, Nos. 03-cr-929(S-5) & (S-8) (E.D.N.Y. Apr. 9, 2008). Basciano now awaits a third trial in the Eastern District before Judge Garaufis on a different indictment charging him with one count of substantive racketeering, again in connection with the Bonanno crime family, see 18 U.S.C. § 1962(c); two counts of conspiracy to murder in aid of racketeering, see id. § 1959(a)(5); one count of murder in aid of racketeering – a capital offense – see id. § 1959(a)(1); and a related firearms charge, see id. § 924(c)(1)(A)(iii). See Indictment, United States v. Basciano, No. 05-cr-060(S-9) (E.D.N.Y. April 17, 2008).

Basciano appeals the district court's denial of his motion to dismiss on double jeopardy grounds those counts of the pending 05-cr-060(S-9) indictment charging him with substantive racketeering (Count One) and conspiracies to murder in aid of racketeering (Counts Three and Nine), as well as the denial of his motion to reconsider this ruling.[2] Basciano asserts that the pending substantive racketeering crime is the same as the one for which he already stands convicted under 03-cr-929(S-8) because the enterprise and pattern of racketeering at issue in the two prosecutions are the same. He further contends that the pending 05-cr-060(S-9) murder-in-aid-of-racketeering conspiracies are legally subsumed

_____

[1] The Bonanno, Colombo, Gambino, Genovese, and Lucchese crime families constitute the New York City area Mafia. See United States v. Eppolito, 543 F.3d 25, 28 (2d Cir. 2008); accord United States v. Pizzonia, 577 F.3d 455, 459 n.1 (2d Cir. 2009).

[2] Basciano's double jeopardy motion did not seek dismissal of the sole capital count in the pending indictment, Count Four, which charges him with the substantive crime of murder in aid of racketeering. Thus, neither that count, nor the firearms charge, is at issue on this appeal.

3

within the 03-cr-929(S-5) racketeering conspiracy of which he stands convicted.

The government concedes that the successive substantive racketeering charges against Basciano involve the same enterprise – the Bonanno crime family – but insists that the offenses are distinguished by different patterns of racketeering. Specifically, it asserts that the pattern at issue in Basciano's earlier substantive racketeering prosecution reflected the day-to-day activities of the Bonanno crime family over the quarter century from 1979 to 2004. The government submits that the pattern at issue in the pending substantive racketeering prosecution, by contrast, is more limited in time and scope, reflecting Basciano's leadership and defense of the Family in the wake of various 2004 arrests, including Basciano's own on November 19, 2004.

As for the pending murder-in-aid-of-racketeering conspiracies, the government submits that these crimes require proof of elements different from those required for the racketeering conspiracy crime of conviction, thus passing the double jeopardy test established by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932), and reiterated in United States v. Dixon, 509 U.S. 688, 696, 704 (1993).

We agree with the government's second argument, but not with its first. In support of its pattern argument, the government submits that only the five predicate acts ascribed to Basciano – and not six further predicates charged to co-defendants – are properly considered in identifying the pattern at issue in his pending substantive racketeering prosecution. Following this approach, the district court highlighted two of the five predicates attributed to Basciano in identifying a pattern of racketeering informed by a different homicidal motive

4

than that at issue in the substantive crime of conviction. We are not persuaded by either the urged approach or the conclusion as to motive. The trial record on the substantive crime of conviction demonstrates an expansive homicidal motive encompassing one, if not both, of the predicates emphasized by the district court. In any event, where, as in this case, a grand jury has charged a single pattern of racketeering consisting of various predicate acts ascribed to a number of co-defendants, a court properly considers all charged predicates in identifying the pattern through which the defendants are alleged to have conducted the affairs of an enterprise. To identify pattern in such a case only by reference to the predicates charged against an individual defendant, as the government urges, would lead to the untenable conclusion, rejected even by the government at oral argument, that a single § 1962(c) charge against multiple defendants might be construed to plead multiple patterns of racketeering – in short, multiple substantive racketeering crimes.

Upon review of the totality of predicates pleaded in the pending substantive racketeering count, we conclude that the pattern alleged therein is, in fact, part of the same broad pattern proved in the substantive racketeering crime of conviction. Indeed, the government offered proof of most of the predicate acts charged against Basciano in the pending substantive racketeering count to "complete the story" of the substantive racketeering crime of conviction. Under these circumstances, we conclude that double jeopardy bars Basciano's successive prosecution for substantive racketeering as pleaded in

5

the pending indictment.[3]

Accordingly, we affirm the district court's denial of Basciano's double jeopardy challenge to Counts Three and Nine of the pending indictment, but we reverse its denial of the double jeopardy challenge to Count One and remand the case with directions to dismiss that count.

## I. Background

Our analysis of Basciano's double jeopardy challenge necessarily requires a preliminary review of both his past racketeering crimes of conviction and the pending charges. This review is complicated by the many superseding versions of the two indictments at issue, some of which were pending at the same time.

### A. Indictment 03-cr-929: The Conspiratorial and Substantive Racketeering Crimes of Conviction

The case in which Basciano stands convicted, denominated on the docket of the Eastern District as 03-cr-929, was first filed in 2003. Basciano was not a named defendant in the initial indictment. Rather, on November 19, 2004, he was arrested on a second superseding version of this indictment filed the previous day, which charged him and six co-defendants with various crimes stemming from defendants' participation in the Bonanno crime family. The racketeering conspiracy charge on which Basciano stands convicted is

---

[3] Our decision does not foreclose Basciano's prosecution for the underlying predicate crimes. See United States v. Walsh, 700 F.2d 846, 856 (2d Cir. 1983); accord United States v. Polanco, 145 F.3d 536, 542 (2d Cir. 1998) (recognizing that defendant may be prosecuted for both racketeering and predicate crimes establishing pattern of racketeering).

6

that pleaded in the fifth superseding version of this indictment, ("03-cr-929(S-5)"), while the substantive racketeering charge of conviction is that pleaded in the indictment's eighth superseding version, ("03-cr-929(S-8)").

### 1. Basciano's Racketeering Conspiracy Conviction

The racketeering conspiracy charge of conviction is alleged as the first count of 03-cr-929(S-5), in which only Basciano and Patrick DeFilippo were named as defendants. Count One charged that from January 1979 through January 2005 the named defendants conspired together and with unnamed others "to conduct and participate" in the affairs of the Bonanno crime family "through a pattern of racketeering activity." 03-cr-929(S-5) ¶ 14.

The indictment described the Bonanno crime family as an organized criminal enterprise operating in the United States and Canada whose activities affected interstate and foreign commerce. See id. ¶ 1. The Family allegedly operated according to a familiar structure: "crews" of "made" members (also known as "soldiers," "good fellows," or "buttons") and associates were led by "captains," who in turn reported to a "boss," "underboss," and "consigliere." Id. ¶¶ 2-5. At "various times" relevant to the charged conspiracy, Basciano allegedly served the Family at every level, i.e., as an associate, as a soldier, as a captain, and, eventually, as acting boss. Id. ¶ 8. DeFilippo allegedly served the Family as an associate, as a soldier, and as a captain. See id.

Count One charged that Basciano and DeFilippo agreed to conduct the Family's affairs through a pattern of racketeering activity involving the commission of at least two of the following thirteen predicate acts:

7

• Act One:      Between January 1979 and January 2003, Basciano and others conducted an illegal gambling business involving policy.

• Act Two:      Between January 1979 and January 2005, Basciano and DeFilippo conducted a gambling business involving joker-poker machines.

• Act Three:    Between October and November 14, 1985, Basciano and DeFilippo conspired to cause and attempted to cause the death of John Doe #1, subsequently identified as David Nunez.

• Act Four:     Between January 1990 and January 2003, DeFilippo and others conducted an illegal gambling business involving bookmaking.

• Act Five:     Between January 1990 and December 1994, Basciano and others made an extortionate extension of credit to John Doe #2, subsequently identified as Generoso Barbieri.

• Act Six:      Between January 1990 and December 1994, Basciano and others made an extortionate extension of credit to John Doe #3, subsequently identified as John Palazzolo.

• Act Seven:    Between December 1996 and February 2002, DeFilippo and others conspired to use extortionate means to collect credit.

• Act Eight:    Between December 1996 and December 2001, DeFilippo and others used extortionate means to collect credit from John Doe #4, subsequently identified as Frank Giannini.

• Act Nine:     Between January 1998 and August 2001, DeFilippo and others used extortionate means to collect credit from John Doe #5, subsequently identified as "Andrew," a person whose last name was unknown.

• Act Ten:      Between March 1 and 18, 1999, DeFilippo and others conspired to cause and caused the death of Gerlando Sciascia.

• Act Eleven:   Between January 1 and February 15, 2001, Basciano and others conspired to cause and caused the death of Frank Santoro.

• Act Twelve:   Between December 2001 and March 2002, Basicano and others solicited the death of John Doe #6, subsequently identified as Dominick Martino.

8

• Act Thirteen: Between January and November 2004, Basciano and others conspired to use extortionate means to collect credit from John Doe #7, subsequently identified as Peter Calabrese.

Two of these predicate acts gave rise to separate charges against Basciano: the illegal joker-poker gambling business was the basis for Count Two of 03-cr-929(S-5), see 18 U.S.C. § 1955, and the extortionate collection of credit from John Doe #7 was the basis for Count Eleven, see id. § 894(a)(1).[4]

Basciano and DeFilippo stood trial on 03-cr-929(S-5) in early 2006. On May 9, 2006, a jury found both defendants guilty of the racketeering conspiracy charged in Count One. In reaching this determination, the jury found proved gambling predicate Acts One, Two, and Four; the attempted Nunez murder and the related conspiracy charged together as predicate Act Three; and the extortion conspiracy charged as predicate Act Seven. It found the extortions charged in predicate Acts Five, Six, Eight, Nine, and Thirteen not proved. It could not reach a unanimous determination as to the Sciascia and Santoro murder predicates charged as Acts Ten and Eleven, or as to the solicitation to murder Martino charged as predicate Act Twelve.

The jury found Basciano not guilty of the Count Eleven extortion charge that corresponded to predicate Act Thirteen. It was unable to reach unanimity as to Basciano's commission of the gambling crime charged in Count Two, even though it had found proved his _agreement_ to its commission, as indicated by its determination that corresponding

---

[4] We do not here detail the remaining counts of the indictment, which were charged only as against DeFilippo, or the jury's mixed findings as to these counts.

racketeering Act Two was proved.

### 2. Basciano's Substantive Racketeering Conviction

In anticipation of retrying Basciano and DeFilippo on those counts of 03-cr-929(S-5) on which the trial jury had not been able to reach a verdict, the government sought and on June 29, 2006, obtained from the grand jury a sixth superseding version of 03-cr-929, which added a substantive racketeering charge against Basciano for conducting the affairs of the Bonanno crime family between January 1999 and January 2006 through a pattern of racketeering. At the time, Basciano already stood indicted of substantive racketeering for conducting the affairs of the Family through a pattern of racketeering in Indictment 05-cr-060, discussed further infra at Part I.B. Because the 03-cr-929 indictment was superseded twice more before trial, we here focus on the charges as stated in 03-cr-929(S-8), the indictment on which Basciano actually stood trial in the summer of 2007.

Count One of 03-cr-929(S-8) charged that from January 1979 through November 2004 Basciano "conducted and participated . . . in the conduct" of – as opposed to agreeing with others to conduct, the crux of his conspiracy charge of conviction – the affairs of the Bonanno crime family through a pattern of racketeering activity. 03-cr-929(S-8) ¶ 14. Indictment 03-cr-929(S-8) described the structure and purpose of the Bonanno Family in terms identical to those used in 03-cr-929(S-5). Moreover, as in 03-cr-929(S-5), 03-cr-929(S-8) alleged that at various times, Basciano served as an associate, soldier, captain, and acting boss of the Bonanno crime family. See id. ¶ 8. Basciano was alleged to have conducted the affairs of the Bonanno crime family through the following predicate acts:

10

- Act One: Between January 1 and February 15, 2001, Basciano and others conspired to cause and caused the death of Frank Santoro.

- Act Two: Between June 2001 and July 2002, Basciano and others solicited the death of John Doe #1, subsequently identified as Dominick Martino.

- Act Three: Between October and December 2002, Basciano and others solicited the death of John Doe #2, subsequently identified as Salvatore Vitale.

- Act Four: Between January 2000 and December 2002, Basciano and others conspired to distribute marijuana.

- Act Five: Between January and December 2004, Basciano and others conducted an illegal gambling business involving a lottery.

- Act Six: Between January 2000 and November 2004, Basciano and others conducted an illegal gambling business involving sports betting.

Count Two of 03-cr-929(S-8) recharged Basciano with the illegal joker-poker gambling business on which the jury that considered 03-cr-929(S-5) could not reach a verdict. Count Three of 03-cr-929(S-8) charged him with conspiring to distribute marijuana, and Counts Four and Five charged him with operating illegal gambling businesses involving, respectively, a lottery and sports betting.

On July 31, 2007, a jury found Basciano guilty of all counts charged in 03-cr-929(S-8). As to the substantive racketeering charge, the jury found all predicate acts proved. On March 31, 2008, the district court sentenced Basciano to life imprisonment for all crimes proved under the (S-5) and (S-8) iterations of the 03-cr-929 indictment. The life sentence was the maximum prescribed by law and consistent with that recommended by the Guidelines in light of the murder predicates to the racketeering counts of conviction. See 18 U.S.C. § 1963(a); U.S.S.G. §§ 2E1.1, 2A1.1.

11

B.    Pending Indictment 05-cr-060(S-9)

Shortly after Basciano's November 19, 2004 arrest, Joseph Massino, the then-incarcerated official boss of the Bonanno crime family and a co-defendant with Basciano in the 03-cr-929 case, advised federal authorities that Basciano was pursuing criminal activity from prison, notably, the murder of Randolph Pizzolo, which in fact occurred on November 30, 2004.[5]  Moreover, while in jail, Basciano allegedly proposed to Massino the murder of Greg Andres, an Assistant United States Attorney actively involved in the pending investigation and prosecution of the Family's criminal activities.  In early January 2005, Massino agreed to the government recording his conversations with Basciano about these alleged crimes.[6]  Soon thereafter, on January 26, 2005, a grand jury sitting in the Eastern District of New York returned the first indictment under docket number 05-cr-060, charging Basciano and Dominick Cicale with conspiring to murder and actually murdering Pizzolo in aid of racketeering, see 18 U.S.C. § 1959(a)(1), (5), and with using and carrying a firearm in connection with the preceding two crimes, see id. § 924(c).[7]

---

[5] Massino pleaded guilty on June 23, 2005, to a single count of murder in aid of racketeering, see 18 U.S.C. § 1959(a)(1), charged in Count Nine of the third superseding indictment in the 03-cr-929 case.  Massino previously had been convicted of substantive and conspiratorial racketeering, among other crimes, in a separate case.  See United States v. Cosoleto, No. 02-cr-307 (E.D.N.Y. Mar. 19, 2002).  Massino was sentenced on June 23, 2005, to consecutive life sentences in these two cases.

[6] The lawfulness of these interceptions is not at issue on this appeal.

[7] Cicale pleaded guilty on February 13, 2006, pursuant to a cooperation agreement that would ultimately result in his testifying against Basciano at the trials on the S-5 and S-8 versions of the 03-cr-929 indictment.

12

The racketeering enterprise in furtherance of which the first two crimes were allegedly committed was once again the Bonanno crime family, whose purposes, methods, means, and structure are detailed in 05-cr-060 in terms identical to those used in the various iterations of 03-cr-929. Indictment 05-cr-060, however, included a pleading section not found in any of the 03-cr-929 indictments entitled "VINCENT BASCIANO's Post-Arrest Participation in the Affairs of the Bonanno Family," which detailed Basciano's conduct of Family activities even while incarcerated, notably, (1) his use of a visiting relative to send messages to Family members and associates "regarding the maintenance and ongoing operation of the Bonanno family," 05-cr-060 ¶ 15; (2) his oversight of a pre-arrest directive to Bonanno members and associates to murder Pizzolo, see id. ¶ 17; and (3) his proposal to murder AUSA Andres, identified in the indictment simply as a federal law enforcement official, see id. ¶¶ 16, 21.

The 05-cr-060 indictment was also frequently superseded, and its fourth superseding version, filed February 2, 2006, was the first to charge Basciano (together with Anthony Aiello, Vincenzo Masi, Frank Esposito, Eugene Gallo, and unnamed others) with substantive racketeering in connection with the Bonanno crime family.[8] Our focus, however, is on the ninth superseding version of 05-cr-060, returned on April 17, 2008, which named Basciano, Michael Mancuso, Anthony Indelicato, Anthony Aiello, and Anthony Donato as defendants,

---

[8] Gallo and Esposito pleaded guilty on April 18, 2006, to illegal gambling, see 18 U.S.C. § 1955, charged in Count 17 of the sixth superseding indictment in the 05-cr-060 case. Masi pleaded guilty on April 16, 2007, to assault in aid of racketeering, see 18 U.S.C. § 1959(a)(3), charged in Count 11 of the seventh superseding indictment in the case.

13

as it is Counts One, Three, and Nine of that sixteen-count pending indictment that are at issue on this appeal.[9]

Count One of 05-cr-060(S-9) charges Basciano, Indelicato, Aiello, and unnamed others with substantive racketeering on behalf of the Bonanno crime family between February 1997 and June 2005. See 18 U.S.C. § 1962(c). The Family's status as a racketeering enterprise is described in terms virtually identical to those pleaded in the first version of the 05-cr-060 indictment, which is to say that the purposes, means, methods, and structure of the Family are as stated in the 03-cr-929(S-5) and (S-8) indictments. While 05-cr-060(S-9) repeats the 03-cr-929(S-5) allegations that Basciano had served the Family as an associate, soldier, captain, and acting boss, it provides more detail, explaining that Basciano became acting boss "following the January 20, 2004 arrest and incarceration of Bonanno family acting boss Anthony Urso, who became the Bonanno family acting boss following the January 9, 2003 arrest and incarceration of Bonanno family official boss Joseph Massino." 05-cr-060(S-9) ¶ 12. It further explains that defendant Michael Mancuso became the acting boss of the Family following Basciano's November 19, 2004 arrest. See id. ¶ 13.

The pattern of racketeering through which the defendants are alleged to have

_____

[9] On August 6, 2008, after Basciano filed his dismissal motion but before the district court's ruling, co-defendants Mancuso, Indelicato, Donato, and Aiello all entered guilty pleas, leaving Basciano as the sole defendant awaiting trial on 05-cr-060(S-9). Notably, Indelicato and Aiello both pleaded guilty to the substantive racketeering charged in Count One of the indictment.

14

committed the substantive racketeering charged in pending Count One consists of the

following predicate acts:

- Act One: Between November 1 and 30, 2004, Basciano, Aiello, and unnamed others conspired to cause and caused the death of Randolph Pizzolo.

- Act Two: Between January 1 and February 15, 2001, Indelicato and unnamed others conspired to cause and caused the death of Frank Santoro.

- Act Three: On November 23, 2004, Basciano solicited another person to cause the death of an unnamed federal law enforcement official, subsequently identified as AUSA Greg Andres.

- Act Four: Between August 2003 and November 19, 2004, Basciano, Indelicato, and unnamed others conspired to cause the death of Patrick DeFilippo, and Basciano and others solicited another to cause DeFilippo's death.

- Act Five: Between September and November 2004, Basciano and unnamed others conspired to cause the death of Joseph Bonelli.

- Act Six: Between October 1 and November 12, 2004, Aiello and unnamed others conspired to use and used extortionate means to collect credit from John Doe #1.

- Act Seven: Between September 2003 and June 2005, Aiello and unnamed others conspired to use and used extortionate means to collect credit from John Doe #2.

- Act Eight: Between September 2003 and June 2005, Aiello and unnamed others conspired to use and used extortionate means to collect credit from John Doe #3.

- Act Nine: Between January 2000 and July 2001, Indelicato and unnamed others conspired to distribute marijuana.

- Act Ten: Between February and March 5, 1997, Aiello and unnamed others conspired to affect interstate commerce by robbing the Café Vienna in Queens, New York.

- Act Eleven: On June 23, 2005, Basciano attempted to steal property by extortion from John Doe #4, a criminal defense attorney subsequently identified as Jeffrey Lichtman.

Certain predicate acts also support independent counts in 05-cr-060(S-9). Notably, Count Three charges Basciano together with Mancuso, Aiello, and unnamed others with conspiring in November 2004 to cause Pizzolo's death in aid of racketeering. See 18 U.S.C. § 1959(a)(5). Count Four charges the same defendants with Pizzolo's November 30, 2004 murder in aid of racketeering. See id. § 1959(a)(1). Count Five charges the same defendants with using and carrying a firearm during the conspiracy to murder and actual murder of Pizzolo. See id. §§ 924(c)(1)(A)(iii), 2. Count Nine charges Basciano, Indelicato, and unnamed others with conspiring in 2003-04 to murder DeFilippo in aid of racketeering. See id. § 1959(a)(5).[10]

C.    Basciano's Double Jeopardy Challenge

On July 14, 2008, Basciano moved to dismiss Counts One, Three, and Nine of 05-cr-

---

[10] The remaining counts of 05-cr-060(S-9) are as follows: Count Two charges Indelicato and Aiello with racketeering conspiracy, based on an agreement to conduct the affairs of the enterprise through a pattern of racketeering consisting of the acts denominated in Count One as Acts 1, 2, 4, and 6-10 – in short, all acts except Basciano's alleged solicitation to murder a federal official, his conspiracy with unnamed others to cause the death of Joseph Bonelli, and his attempted larceny by extortion of a criminal defense attorney. See 18 U.S.C. § 1962(d). Count Six charges Donato and unnamed others with conspiring to murder Frank Santoro in aid of racketeering. See id. § 1959(a)(5). Count Seven charges Indelicato, Donato, and unnamed others with murdering Santoro in aid of racketeering. See id. § 1959(a)(1). Count Eight charges Donato and unnamed others with using and carrying a firearm in relation to Counts Six and Seven. See id. § 924(c)(1)(A)(iii). Count Ten charges Aiello and unnamed others with assaulting John Doe #1 in aid of racketeering. See id. § 1959(a)(3). Counts Eleven, Thirteen, and Fifteen charge Aiello and unnamed others with conspiring to use extortionate means to collect credit from John Does #1, #2, and #3, respectively. See id. § 894(a)(1). Counts Twelve, Fourteen, and Sixteen charge Aiello and unnamed others with using extortionate means to collect credit from John Does #1, #2, and #3, respectively. See id.

16

060(S-9) on double jeopardy grounds. In a detailed, unpublished memorandum and order, the district court denied the motion. See United States v. Basciano, No. 05-cr-060, 2008 WL 4596215, at *1 (E.D.N.Y. Oct. 14, 2008). Analyzing substantive racketeering Count One of 05-cr-060(S-9) by reference to the five-factor test approved by this court in United States v. Russotti, 717 F.2d 27, 33 (2d Cir. 1983) – but considering only the predicate acts charged against Basciano – the district court determined that the pending charge pleaded a different pattern of racketeering from that at issue in 03-cr-929(S-8). Specifically, the district court concluded that the 05-cr-060(S-9) pattern of racketeering sought to defend the Bonanno crime family and Basciano's leadership role in that enterprise after the Family fell under government siege, as reflected in the 2004 arrests of various members, including Basciano. See United States v. Basciano, 2008 WL 4596215, at *6. As for Basciano's double jeopardy challenge to the two pending counts of conspiring to murder in aid of racketeering, the district court concluded that the appropriate legal standard for review was the same-elements test articulated in Blockburger v. United States, 284 U.S. at 304, under which defendant's challenge failed. See United States v. Basciano, 2008 WL 4596215, at *7-8. Accordingly, the district court rejected Basciano's double jeopardy challenge in its entirety.

Basciano promptly moved for reconsideration, and on January 20, 2009, the district court issued a second detailed, unpublished memorandum denying that application. See United States v. Basciano, No. 05-cr-060 (E.D.N.Y. Jan. 20, 2009) (order denying motion for reconsideration).

This appeal followed.

17

## II. Discussion

### A. Jurisdiction and Standard of Review

Although this court generally lacks jurisdiction to review rulings before a final judgment has been entered, see 28 U.S.C. § 1291; United States v. MacDonald, 435 U.S. 850, 853-54 (1978), the collateral order doctrine, see, e.g., Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949), creates an exception for the denial of a pre-trial motion to dismiss criminal charges on double jeopardy grounds, see United States v. Olmeda, 461 F.3d 271, 278 (2d Cir. 2006). As the Supreme Court explained in Abney v. United States, 431 U.S. 651 (1977), "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence," id. at 660. Accordingly, we have jurisdiction to hear Basciano's collateral challenge to the denial of his motion to dismiss Counts One, Three, and Nine of 05-cr-060(S-9). Further, because a double jeopardy challenge presents a question of law, our review is de novo. See United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008); United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003).

### B. Double Jeopardy Proscribes Successive Charges that Are the Same in Fact and in Law

The Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This Double Jeopardy Clause protects against both multiple punishments and successive prosecutions for the same offense, regardless of whether a first prosecution resulted in conviction or acquittal. See

18

Schiro v. Farley, 510 U.S. 222, 229 (1994). In the case of successive prosecutions, the critical inquiry is whether the offenses are "the same in fact and in law." United States v. Estrada, 320 F.3d at 180.

Because the conspiracies to commit murder charged in Counts Three and Nine of 05-cr-060(S-9) accuse Basciano of violating a statute, 18 U.S.C. § 1959(a)(5), different from that at issue in his racketeering conspiracy prosecution, see id. § 1962(d), this part of his double jeopardy challenge depends on a determination that the two crimes are the same "in the legal sense, as defined by Congress," United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999). As explained infra at II.C, the standard for analyzing whether offenses are the same in law is the same-elements test established in Blockburger v. United States, 284 U.S. at 304.

By contrast, because the substantive racketeering counts charged against Basciano in 05-cr-060(S-9) and 03-cr-929(S-8) allege violations of the same statute, 18 U.S.C. § 1962(c), this part of his double jeopardy challenge depends on a determination that these crimes are the same in fact, see United States v. Olmeda, 461 F.3d at 282. To decide this question, we consider infra at II.D whether a reasonable person "familiar with the totality of the facts and circumstances" would construe the substantive racketeering at issue in 03-cr-929(S-8) to include the substantive racketeering charged in 05-cr-060(S-9). Id. Our review is guided by a burden-shifting framework that requires the defendant, in the first instance, to make a colorable showing that the crimes are the same, whereupon the government is required to demonstrate "by a preponderance of the evidence" that a person "familiar with the totality of the facts and circumstances would not, in fact, construe the initial indictment, at the time

19

jeopardy attached, to cover the offense that was charged in the subsequent prosecution." Id. at 283 (emphasis in original).

C.    Double Jeopardy Challenge to Pending Counts Three and Nine

Basciano contends that Counts Three and Nine of Indictment 05-cr-060(S-9), charging him with conspiring with others to murder Pizzolo and DeFilippo, respectively, "for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family," 05-cr-060(S-9) ¶¶ 54, 64; see also 18 U.S.C. § 1959(a)(5), are barred by the Double Jeopardy Clause because these crimes are legally subsumed within the prior 03-cr-929(S-5) conspiracy to violate 18 U.S.C. § 1962(d) by conducting the affairs of the Bonanno crime family through a pattern of racketeering that included murders. We are not persuaded.

At the outset, we note the parties' disagreement over the legal standard properly applied to this double jeopardy challenge. The government argues that the district court correctly relied on the same-elements test established in Blockburger v. United States, 284 U.S. at 304, and reaffirmed in United States v. Dixon, 509 U.S. at 696, 704. That test asks whether "each offense contains an element not contained in the other," and provides that, if not, "they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. at 696; see also Blockburger v. United States, 284 U.S. at 304 ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). Basciano submits that the same-elements test is inadequate in racketeering cases. He

20

urges us to "look beyond the literal words of the relevant statutes to the specific allegations because . . . distinctions between the elements may be form without substance, or distinctions without a real difference." Appellant's Br. at 53.

In effect, what Basciano advocates is a variation of the "same conduct" test articulated in Grady v. Corbin, 495 U.S. 508, 521-22 (1990), which looked past the statutory elements of a charged offense to the particular facts the government intended to prove in the challenged prosecution. That approach to double jeopardy analysis is now foreclosed, however, by the Supreme Court's decision in United States v. Dixon, 509 U.S. at 704, which expressly overruled Grady's conduct-based test and reaffirmed Blockburger's same-elements test as the appropriate standard for determining whether successive prosecutions under different statutes effectively charge the same crime.

In the immediate aftermath of Dixon, this court briefly entertained the possibility that, in situations "where one of the statutes covers a broad range of conduct," examination of "the allegations of the indictment rather than only the terms of the statutes" would be appropriate to a double jeopardy assessment. United States v. Liller, 999 F.2d 61, 63 (2d Cir. 1993). Applying such a fact-based approach, a district court outside this circuit has concluded that it is impermissibly multiplicitous to charge a § 1959(a)(5) conspiracy to murder in aid of racketeering in the same indictment with a § 1962(d) conspiracy that alleges an agreement to commit the same murder as a predicate act of racketeering. See United States v. Gardner, 417 F. Supp. 2d 703, 713-14 (D. Md. 2006). Although Basciano acknowledges that Gardner is the only case ever to have reached this conclusion, see Appellant's Br. at 52, he urges us

21

to adopt its reasoning and to order dismissal of the pending § 1959(a)(5) counts against him. We decline this invitation.

After Liller – and well before Gardner – this court construed Dixon to preclude fact-based analysis of double jeopardy claims based on successive prosecutions under different statutes. In our 1999 decision in United States v. Chacko, we held that Dixon forecloses examination of "the specifics of the indictment and the nature of the counts charged [even] when the underlying statute is broad." 169 F.3d at 147. We explained that the critical double jeopardy inquiry is not factual, i.e., whether the same conduct is at issue in charges brought under different statutes, but legal, i.e., "whether the 'offense' – in the legal sense, as defined by Congress – complained of in one count is the same as that charged in another." Id. at 146; see also id. at 148 (holding that bank fraud charged under 18 U.S.C. § 1344 and making false statements to financial institution charged under § 1014 are not same offense for double jeopardy purposes despite potential overlap in proof of elements).[11]

Applying these principles to this case, we are mindful that this court has long recognized that a defendant may be prosecuted both for substantive racketeering in violation of § 1962(c) and for the commission of violent crimes in aid of racketeering in violation of § 1959(a)(1)-(3). See United States v. Polanco, 145 F.3d 536, 542 (2d Cir. 1998); United

---

[11] For this reason, Basciano's reliance on United States v. Korfant, 771 F.2d 660, 662 (2d Cir. 1985), is unavailing. Korfant established a set of fact-based factors relevant to determining whether successive conspiracy charges brought under the same statute were the same for double jeopardy purposes. Basciano challenges conspiracy charges brought under different statutes.

22

States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992). We now reach the same conclusion with respect to the related conspiracies proscribed by § 1962(d) and § 1959(a)(5). These conspiracies require proof of different elements and, therefore, are legally distinct offenses not implicating double jeopardy concerns. See United States v. Dixon, 509 U.S. at 696; Blockburger v. United States, 284 U.S. at 304.

To prove a § 1959(a) conspiracy, the government must establish, inter alia, that the defendant (1) agreed with others to commit a violent crime – either murder or kidnapping, see § 1959(a)(5), or maiming or specified assaults, see § 1959(a)(6) – and (2) entered into that agreement "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity," 18 U.S.C. § 1959(a)(5).[12] Neither of these elements, i.e., (1) agreement on a violent crime, or (2) a specific purpose to maintain or increase one's position in a racketeering enterprise, is required to prove a § 1962(d) racketeering conspiracy. Rather, the latter statute requires proof, inter alia, that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering. See, e.g., United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009). While the pattern element demands proof of an agreement to commit at least two crimes, neither crime need involve the violence specified in § 1959(a)(5). See 18 U.S.C. § 1961(1) (identifying wide range of non-violent crimes that can constitute "racketeering activity").

_____

[12] The "purpose" element may also be satisfied by proof that the crime was committed as consideration for the payment or promise of "anything of pecuniary value" from a racketeering enterprise. 18 U.S.C. § 1959(a).

23

Further, the conduct prong requires only that conspirators reached a meeting of the minds as to the operation of the affairs of the enterprise through a pattern of racketeering conduct. See United States v. Yannotti, 541 F.3d 112, 129 (2d Cir. 2008). No proof is required of any personal aspirations to achieve or maintain particular positions in the enterprise as in a § 1959(a)(5) crime. By contrast, a § 1959(a)(5) conspiracy does not demand proof of either element of a § 1962(d) conspiracy, i.e., (a) a pattern of racketeering, or (b) an agreement to conduct the affairs of the enterprise through such a pattern. A § 1959(a)(5) conspiracy may be evidenced by an agreement to commit a single crime, provided that the crime is murder or kidnapping and the purpose of its commission is to gain membership in or to maintain or achieve a position within a racketeering enterprise.

To be sure, the violence proscribed by § 1959 may sometimes be part of a pattern of racketeering proscribed by § 1962. Nevertheless, because distinct factual elements must be proved to establish § 1959(a)(5) and § 1962(d) conspiracies, a defendant may be prosecuted under both statutes without violating the Double Jeopardy Clause. We therefore conclude that the § 1959(a)(5) charges pending against Basciano do not place him in jeopardy a second time for a crime that is legally the same as that at issue in his past § 1962(d) prosecution, and we affirm the district court's denial of Basciano's motion to dismiss Counts Three and Nine of Indictment 05-cr-060(S-9).

> D.     Double Jeopardy Challenge to Pending Count One
>
> 1.     Double Jeopardy Precludes Successive Prosecutions for Conducting the Affairs of the Same Enterprise Through the Same Pattern of Racketeering

24

Federal law makes it a crime for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To convict a defendant of racketeering, the government must prove, at a minimum, the existence of an enterprise and a related pattern of racketeering activity. See United States v. Turkette, 452 U.S. 576, 583 (1981); United States v. Quinones, 511 F.3d 289, 314 (2d Cir. 2007) (identifying "standard" five elements of substantive racketeering as (1) an enterprise, (2) affecting interstate or foreign commerce, (3) with which defendant was associated, (4) and in conduct of which defendant participated (5) through pattern of two or more specified racketeering activities).

For successive substantive racketeering prosecutions to place a defendant twice in jeopardy for the same offense, "both the enterprise and the pattern of racketeering activity" at issue in the two cases must be the same; "[i]f either is different, there is no infirmity under the double jeopardy clause." United States v. Russotti, 717 F.2d at 33 (emphasis in original). Here, the government concedes that the enterprise charged in the pending substantive racketeering count – the Bonanno crime family – is the same as that charged in the substantive racketeering count of conviction. Thus, the critical question on this appeal is whether the pattern element charged in Count One of 05-cr-060(S-9) is factually distinct from that at issue in the 03-cr-929(S-8) prosecution.

2. The Patterns Alleged in the Successive Prosecutions Are Factually the Same

25

a.    The *Russotti* Test

Because a pattern of racketeering involves multiple predicate crimes, often spanning years and even decades, the boundaries and contours of such patterns are less susceptible to precise delineation than those of discrete transaction crimes, such as robbery or murder. This court has thus approved a multi-factor test for determining whether successive racketeering charges in fact present distinct patterns of racketeering activity. See id. (endorsing test set out in United States v. Dean, 647 F.2d 779, 788 (8th Cir. 1981)). Under this test, a court properly considers

> (1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge.

Id. (internal quotation marks omitted). As we recently observed, these factors are sufficiently comprehensive to warrant review of the totality of the circumstances, see United States v. Pizzonia, 577 F.3d at 464 (observing that "[o]ur sister circuits have adopted similar holistic approaches"), which comports with our overall approach to double jeopardy review, see United States v. Olmeda, 461 F.3d at 283, discussed supra at II.B.

b.    Basciano's Colorable Showing of Duplicative Patterns

The district court found that Basciano had made a colorable showing that the successive substantive racketeering prosecutions involved the same broad pattern of racketeering. See United States v. Basciano, 2008 WL 4596215, at *6. That determination

26

finds ready support in the two indictments, which employ identical language to describe the expansive criminal methods and means by which the affairs of the Bonanno crime family were conducted. See 03-cr-929(S-8) ¶¶ 9-12; 05-cr-060(S-9) ¶¶ 8-11. This methods-and-means language strongly suggests that the diverse predicate acts listed in each indictment – involving murder, extortion, gambling, and drug trafficking – manifest the relatedness and continuity required of a "pattern" in the same manner, i.e., simply by virtue of their connection to an enterprise whose business is racketeering. See United States v. Indelicato, 865 F.2d 1370, 1381-84 (2d Cir. 1989) (en banc) (holding that predicate acts must be interrelated and pose threat of continuity to constitute racketeering pattern and that these components may be established in various ways, including by linking each predicate to enterprise whose business is racketeering).

Basciano's preliminary showing finds further support in the fact that the two indictments rely on certain common predicates – although ascribed to different defendants – to establish the alleged patterns of racketeering. Compare 05-cr-060(S-9) ¶¶ 29-31 (charging Indelicato with Santoro murder), ¶ 46 (charging Indelicato with marijuana conspiracy), with 03-cr-929(S-8) ¶¶ 15-17 (charging Basciano with same Santoro murder), ¶ 20 (charging Basciano with same marijuana conspiracy).

Finally, the government's proof of a number of predicate acts alleged in Count One of 05-cr-060(S-9), inter alia, to "complete the story" of the substantive racketeering charged in Count One of 03-cr-929(S-8) similarly contributes to Basciano's colorable showing. See United States v. Basciano, No. 03-cr-929, 2006 WL 385325, at *1, *10 (E.D.N.Y. Feb. 17,

27

2006) (allowing evidence of Pizzolo murder and Bonelli and DeFilippo murder conspiracies "to complete the story of the charged crimes, demonstrate relationships of trust, and corroborate the testimony of cooperating witnesses"); accord United States v. Basciano, No. 03-cr-929, 2007 WL 1791221, at *1 (E.D.N.Y. June 19, 2007).[13] Presumably, the "story" being "completed" was the broad pattern of racketeering through which Basciano and others conducted the affairs of the Bonanno crime family even after Basciano's November 19, 2004 arrest. Indeed, the district court specifically charged the jury that it could consider evidence of uncharged crimes in deciding whether the government had proved the pattern element. See Jury Charge, United States v. Basciano, No. 03-cr-929(S-8), at 56-57 (E.D.N.Y. Aug.

---

[13] In advance of the 03-cr-929(S-5) racketeering conspiracy trial, the government sought permission to introduce the Pizzolo murder, the Bonelli and DeFilippo murder conspiracies, and the solicitation to murder AUSA Andres, among other uncharged crimes, inter alia, (1) to prove the charged enterprise and conspiracy, (2) to "complete the story" of the charged crime, and (3) to show relationships of trust. The government further sought to prove the solicitation to murder AUSA Andres as proof of Basciano's consciousness of guilt on the charged racketeering conspiracy. See Motion To Admit Certain Evidence in Limine, United States v. Basciano, No. 03-cr-929, at 21-23 & n.11, 28, 36-40, 46 (E.D.N.Y. Jan. 13, 2006). The district court ruled the evidence inadmissible to prove enterprise, as Basciano had conceded that element, but it permitted the Pizzolo, Bonelli, and DeFilippo crimes alleged in 05-cr-060 to be proved "to complete the story of the charged [03-cr-929] crimes, demonstrate relationships of trust, and corroborate the testimony of cooperating witnesses," all pursuant to Fed. R. Evid. 404(b). See United States v. Basciano, 2006 WL 385325, at *1, *10. The district court ruled that evidence of the alleged Andres crime, while potentially probative of consciousness of guilt, was unduly prejudicial and, therefore, inadmissible. Id. at *5 n.2, *8. Before the 03-cr-929(S-8) substantive racketeering trial, the government gave notice of its intention to introduce the Pizzolo, Bonelli, and DeFilippo evidence pursuant to the ruling just cited, which, the government noted, remained the law of the case. See Motion in Limine To Admit Evidence of Additional Uncharged Crimes, United States v. Basciano, No. 03-cr-929, at 1-2 (E.D.N.Y. May 15, 2007).

28

1, 2007).[14]

Accordingly, the focus of this appeal is on whether the government has carried its burden of demonstrating that, upon close review of the totality of the circumstances identified in Russotti, a reasonable person would think it "more likely than not" that the two patterns of racketeering at issue are, in fact, distinct. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 329 (2007) (observing that preponderance standard requires proof that fact at issue "is more likely than not" true (emphasis omitted)).

   c. The Government's Failure To Demonstrate by a Preponderance of the Evidence that the Pattern of Racketeering Alleged in Count One of 05-cr-060(S-9) Is Distinct from the Pattern at Issue in 03-cr-929(S-8)

    (1) The Government's Pattern Theory

As noted, the government asserts that the pattern of racketeering attributed to Basciano in 05-cr-060(S-9) is defined by a limited time and purpose: defending the Bonanno crime family and Basciano's leadership role after the Family was threatened by a series of 2004 arrests, including Basciano's own. The government contends that this pattern is narrower than, and distinct from, that at issue in the 03-cr-929(S-8) indictment, which was

---

[14] Although the district court charged the jury that it was to consider evidence of uncharged acts committed by Basciano only (1) as background evidence of (a) the charged enterprise and (b) relationships of trust between Basciano and government witnesses, and (2) in evaluating whether Basciano was willing to violate "the rules of organized crime," it later instructed that in determining whether the government had proved the requisite threat of continued unlawful activity, the jury was "not limited to consideration of the specific racketeering acts charged against the defendant" and could consider "other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities." Jury Charge at 20, 56-57.

evidenced by a host of crimes constituting the day-to-day criminal activities of the Family.

As the Supreme Court recognized in H.J. Inc. v. Northwestern Bell Telephone Co., the "pattern" element of racketeering is a "fairly flexible concept." 492 U.S. 229, 239 (1989). While predicate acts must be related, both to each other (horizontal relatedness) and to the enterprise (vertical relatedness), and must threaten continuous criminal activity to constitute a pattern, see id.; United States v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006), these requirements can be satisfied "in a number of ways," United States v. Indelicato, 865 F.2d at 1382; see also H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 238 (observing that "pattern" element can be "demonstrated by reference to a range of different ordering principles or relationships between predicates"). At the highest level of generality, relatedness and continuity can be established simply by connecting diverse predicate acts to an enterprise "whose business is racketeering activity," such as an organized crime family. United States v. Indelicato, 865 F.2d at 1383. The pattern of racketeering proved to convict Basciano of substantive racketeering under 03-cr-929(S-8) fits this broad description. Indeed, during its summation in the 03-cr-929(S-8) trial, the government described its obligation to prove the pattern element as follows: "The final element for you to decide in the count one, the racketeering count, is whether the defendant engaged in a pattern of racketeering activity. What that means, simply, is just did the defendant commit two or more racketeering acts . . . related to the [Bonanno] family." Trial Tr. at 4412, July 26, 2007.

Narrower patterns of racketeering may be defined and proved by reference to other unifying principles: the "temporal proximity" of predicate acts, or their "common goals, or

30

similarity of methods, or repetitions." United States v. Indelicato, 865 F.2d at 1382; see also, e.g., United States v. Russotti, 717 F.2d at 33-34 (contrasting pattern aimed at arson-for-hire with pattern aimed at extortion); United States v. DeCologero, 364 F.3d 12, 19 (1st Cir. 2004) (contrasting pattern aimed at murder with pattern aimed at robbery and drug trafficking). The government submits that the pattern of racketeering at issue in Count One of 05-cr-060(S-9) is narrowly defined by time and purpose.

The flexibility of the pattern requirement affords the government considerable charging discretion. Once the government charges a particular pattern of racketeering, however, its choice has consequences. Specifically, the charged pattern establishes the "unit of prosecution" that will determine the "scope of protection" for double jeopardy purposes afforded by conviction or acquittal. Sanabria v. United States, 437 U.S. 54, 70 (1978); accord United States v. Langella, 804 F.2d 185, 188 (2d Cir. 1986). The point merits careful attention where, as in this case, the government first prosecutes a defendant for conducting the affairs of an enterprise through the broadest possible pattern of racketeering, i.e., one encompassing virtually all of the criminal activities of an organized crime enterprise for a quarter century. While such a pattern gives the government the greatest latitude to rely on a wide range of crimes to prove substantive racketeering, see United States v. Indelicato, 865 F.2d at 1382-84, it similarly provides the broadest shield against a successive racketeering prosecution based on other criminal activities fitting within that pattern, see generally United States v. Ciancaglini, 858 F.2d 923, 930 (3d Cir. 1988) (observing that government cannot "break an enterprise's over-all pattern of racketeering into discrete parts in order to obtain

31

more than one chance of conviction"); United States v. Russotti, 717 F.2d at 34 (noting danger of government pursuing successive racketeering prosecutions by limiting predicate acts alleged in support of one pattern while holding in reserve other predicate acts).

With these principles in mind, we consider the government's argument that the predicates alleged in 05-cr-060(S-9) are not part of the broad 03-cr-929(S-8) pattern, but part of a distinct pattern aimed only at maintaining Basciano's leadership role and protecting the Family from government attack in the wake of his November 19, 2004 arrest.

> (2)    The Language of Count One of 05-cr-060(S-9) Does Not
> Support the Government's Theory of a Distinct, Narrow
> Pattern of Racketeering

The government's narrow characterization of the pattern alleged in Count One of 05-cr-060(S-9) confronts several significant obstacles, starting with the language of the indictment. Count One of the pending indictment charges Basciano and his co-defendants with conducting the affairs of the Bonanno crime family through "a pattern" of racketeering activity "between February 1997 and June 2005." 05-cr-060(S-9) ¶ 25. Thus, the count references a single pattern alleged to have existed some seven years before both Basciano's January 2004 assumption of the role of acting boss and his November 2004 arrest. This language would hardly support a preponderance finding that the charged pattern is defined by the limited goal of defending the Family or Basciano's leadership role in the wake of his arrest. Similarly at odds with the government's theory is the assertion in Count One that the charged pattern of racketeering includes a number of predicate acts – for example, the 1997 robbery of the Café Vienna, the 2001 murder of Frank Santoro, and the 2000-01 marijuana

32

conspiracy – that both predate Basciano's assumption of the role of acting boss and have little or nothing to do with maintaining that role or defending the Family against law enforcement attacks.

Further, although the pending 05-cr-060(S-9) indictment, in contrast to 03-cr-929(S-8), specifically alleges Basciano's continued participation in the affairs of the Bonanno crime family after his November 19, 2004 arrest, it nowhere asserts that the pattern through which he conducted the Family's affairs after his arrest is distinct from, as opposed to a mere continuation of, the pattern through which he conducted the Family's affairs before his arrest. See generally United States v. Pizzonia, 577 F.3d at 466 (recognizing that pattern of racketeering activity can continue beyond completion of charged predicates).[15] Indeed, the striking similarity in the language used in the 05-cr-060(S-9) and 03-cr-929(S-8) indictments to describe the purposes, methods, and means of the enterprise supports the latter, not the former, conclusion. See 05-cr-060(S-9) ¶¶ 8-11; 03-cr-929(S-8) ¶¶ 9-12.

We recognize, of course, that enterprise and pattern are distinct elements of racketeering. See United States v. Turkette, 452 U.S. at 583. Nevertheless, the evidence proving these elements "may in particular cases coalesce." Id. In this respect, it is

---

[15] While Pizzonia made this observation in reference to a racketeering conspiracy charge, its conclusion about the continuation of a racketeering pattern was not limited to conspiracy cases and, thus, applies equally to the identification of patterns in successive substantive racketeering charges. See 577 F.3d at 466 ("[W]hether a pattern is pleaded to have 'consisted of' or 'included' specified predicate acts, the completion of those predicates does not, as a matter of law, dictate the end of the pattern, much less the attainment or abandonment of the conspiracy's overall objective." (emphasis added)).

33

noteworthy that the 05-cr-060(S-9) and 03-cr-929(S-8) indictments use identical language to allege that murders, including murders to protect the Family from law enforcement interference, routinely link to the expansive, day-to-day criminal affairs of the enterprise:

> The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

05-cr-060(S-9) ¶ 10; 03-cr-929(S-8) ¶ 11.

Viewed in the context of these pleadings, allegations that acting boss Basciano "reported" to actual boss Massino on the 2004 murder of Pizzolo and "proposed the murder" of AUSA Andres, see 05-cr-060(S-9) ¶¶ 17-18, 27-28, 32, appear simply to confirm these leaders' ability to continue conducting the Family's affairs through the expansive pattern of racketeering activity detailed in the 03-cr-929(S-8) indictment, not to signal that they were now employing a distinct pattern of racketeering dating from 2004.

We do not here decide whether a pleading expressly alleging a distinct pattern of conduct based on Basciano's post-arrest activity might have been possible. We simply observe that the indictment as it stands does not support a conclusion that the alleged pattern more likely than not is distinct from that charged in the S-8 indictment.[16]

---

[16] Case law suggests that a defendant's arrest or prosecution may sometimes effect a break in his participation in a conspiracy, permitting the government to bring a successive prosecution for renewed membership in the scheme without violating double jeopardy. See United States v. Romero, 967 F.2d 63, 67 (2d Cir. 1992) (holding that guilty plea to racketeering conspiracy based in part on agreement to violate federal narcotics laws provided

(3) The Pattern of Racketeering Alleged in Count One of 05-cr-060(S-9) Is Appropriately Identified by Reference to All Predicate Acts Charged, Whether or Not Ascribed to Basciano

The government responds to the concerns noted in the immediately preceding section by proposing to rewrite the indictment. Although the grand jury charged that the pattern through which Basciano and his co-defendants conducted the affairs of the Bonanno crime family "consist[ed] of" eleven stated predicate acts, the government submits that the pattern of racketeering charged against Basciano is properly identified by reference only to the five predicate acts ascribed to him. The government contends that the predicate acts attributed to co-defendants in Count One are irrelevant to double jeopardy review because "racketeering acts charged solely against [co-defendants] cannot possibly put Basciano 'in jeopardy' at trial." Appellee's Br. at 20.

The argument is flawed in several respects. First, it implies that Count One of 05-cr-060(S-9) somehow does put Basciano in jeopardy for the predicate acts of racketeering

___

break in defendant's criminal activities such that successive prosecution for narcotics conspiracy was not barred by double jeopardy where limited to conduct following plea); see also United States v. Stricklin, 591 F.2d 1112, 1121 n.2 (5th Cir. 1979) (observing that "further operation of the 'old' conspiracy after being charged with that crime becomes a new offense for purposes of a double jeopardy claim"). But see United States v. Cruz, 797 F.2d 90, 98 (2d Cir. 1986) (observing that arrest terminated only defendant's active participation in conspiracy, not conspiracy itself). We need not here decide whether Romero's reasoning might extend to racketeering cases, so that arrest or prosecution could break a defendant's participation in the conduct of the affairs of an enterprise through a pattern of racketeering. The government did not charge a pattern limited to conduct following Basciano's November 14, 2004 arrest, much less to conduct following his 2007 prosecution under the 03-cr-929(S-8) indictment.

35

ascribed to him. In fact, a substantive racketeering charge does not put a defendant in jeopardy for any predicate acts. It puts a defendant in jeopardy for conducting an enterprise through a pattern of racketeering demonstrated by related predicate acts. See 18 U.S.C. §§ 1961(1), (5), 1962(c); United States v. Pizzonia, 577 F.3d at 459 (observing that object of racketeering "is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts"); see also United States v. Turkette, 452 U.S. at 583 (discussing pattern element of racketeering). To be sure, a defendant must be found to have committed at least two predicate acts to be guilty of substantive racketeering. See 18 U.S.C. § 1961(5); United States v. Gotti, 451 F.3d 133, 136 (2d Cir. 2006). Nevertheless, it is the pattern of activity, not the predicates, that is punished by a racketeering conviction. For precisely this reason, the law permits a defendant to be prosecuted – either simultaneously or at separate times – for both substantive racketeering and the predicate crimes evidencing the pattern of racketeering. See United States v. Walsh, 700 F.2d 846, 856 (2d Cir. 1983); accord United States v. Polanco, 145 F.3d at 542. Thus, there is simply no legal merit to the government's argument that a court should limit its identification of the pattern charged in 05-cr-060(S-9) to the predicate acts charged against Basciano on the theory that he is not being put in jeopardy for acts attributed to others.

Second, where, as here, multiple defendants are charged in a single count with conducting the affairs of an enterprise though a pattern of racketeering consisting of diverse predicates, a court's identification of the charged pattern by reference only to predicates attributed to a particular defendant risks the identification of multiple patterns of racketeering

36

rather than the common pattern alleged by the grand jury. In this case, that could mean identifying a narrow pattern of racketeering as to Basciano and a broader pattern as to his co-defendants, or discrete patterns for each defendant. While the government conceded at oral argument that it could not charge multiple patterns of racketeering in a single substantive count, see Oral Argument Tr., Oct. 27, 2009, at 11, 21, it argues that the disposition of Count One as to Basciano's co-defendants somehow supports narrowing the scope of the charged pattern to the predicates alleged against him. We are not persuaded.

Courts may narrow indictments without offending the Fifth Amendment's Grand Jury Clause when what is removed is "in no way essential to the offense." United States v. Roshko, 969 F.2d 1, 5 (2d Cir. 1992) (internal quotation marks omitted). But pattern is an essential element of racketeering. Once a grand jury has charged a pattern of racketeering common to a number of defendants, only the grand jury, not the court, may decide whether an individual defendant should be charged with a different pattern after co-defendants have pleaded guilty. See generally United States v. Stirone, 361 U.S. 212, 217 (1960) (reversing conviction after government altered element of offense, observing that "neither this nor any other court can know that the grand jury would have been willing to charge" defendant on new theory); United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003) (observing that constructive amendment occurs where proof at trial or jury instructions "so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment" (internal quotation marks omitted)). Of course, the government need not prove all predicate acts alleged in a

37

substantive racketeering charge to establish an alleged pattern of racketeering, or to secure a particular defendant's conviction. Our concern, then, is not with the government reducing the number of predicates through which it intends to prove the charged pattern. Indeed, the government has expressly declined to forego proving the predicates ascribed to co-defendants at Basicano's trial. See Oral Argument Tr., Oct. 27, 2009, at 12. Rather, our concern is with the government substituting a different pattern of racketeering for the pattern charged by the grand jury. Absent further grand jury action, we construe the pending substantive racketeering count as written to charge all named defendants with conducting the affairs of the Bonanno crime family in the period between February 1997 and June 2005 through a common pattern of racketeering evidenced by eleven predicate acts, of which each defendant purportedly committed at least two.

A third flaw in the government's argument is its failure to acknowledge precedent recognizing that evidence beyond a defendant's own predicate acts – whether alleged or not – is relevant to establishing a charged pattern of racketeering. As this court explained in United States v. Indelicato, a defendant charged with substantive racketeering may not be "accountable for the racketeering acts of others," but such acts can constitute some evidence of the nature of the enterprise, which, in turn, can prove the relatedness and continuity essential to a pattern, thereby helping to establish "that the defendant's own acts constitute a pattern within the meaning of RICO." 865 F.2d at 1384. Thus, while the district court correctly observed that the predicate acts attributed to Basciano's co-defendants in Count One of 05-cr-060(S-9) "cannot provide the two predicates necessary to convict Basciano of

38

the substantive RICO charge," it erred in concluding that predicate acts charged to co-defendants "do nothing to establish the RICO charge against Basciano." United States v. Basciano, 2008 WL 4596215, at *4 n.1.

In United States v. DiNome, we recognized that proof of the enterprise and pattern elements of racketeering "may well entail evidence of numerous criminal acts by a variety of persons." 954 F.2d 839, 843 (2d Cir. 1992). A single pattern of racketeering may be common to a number of defendants and, in such circumstances, even though individual defendants "may reasonably claim no direct participation" in the acts of others, "evidence of those acts is relevant to the RICO charges against each defendant." Id. Specifically, the "various criminal activities" of racketeering confederates are admissible against each defendant "to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities." Id. at 844.[17]

Consistent with this precedent, when Basciano was tried – by himself – for substantive racketeering on Indictment 03-cr-929(S-8), the district court specifically charged the jury that

---

[17] As our colleague, Judge Lynch, has explained, the law generally excludes from trial evidence of criminal conduct by persons other than the defendant because it "may distract the jury from its responsibility of deciding what the evidence shows about a particular act." Gerard E. Lynch, RICO: The Crime of Being a Criminal, Parts III & IV, 87 Colum. L. Rev. 920, 944 (1987). But where racketeering is the charge, "the jury is entitled to rely not only on evidence of the defendant's own crimes, but also on evidence of the crimes of those with whom he is alleged to have thrown in his lot" because the judgment required is not simply what acts the defendant committed at particular moments, but whether those acts were "parts of a pattern," i.e., "committed as part of [defendant's] association with a subculture of crime." Id.

it could consider the unlawful activities of other persons in deciding whether the government had carried its burden on the pattern element:

> [I]n determining whether the Government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant; . . . you may also consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

Jury Charge, United States v. Basciano, No. 03-cr-929(S-8), at 57 (E.D.N.Y. Aug. 1, 2007). And, as noted supra at **[39]**, the government specifically reserves the right to offer evidence of the predicate acts attributed to Basciano's co-defendants in Count One of 05-cr-060(S-9) in Basciano's trial on that substantive racketeering charge.

In light of the foregoing, we conclude that all predicate acts alleged in pending Count One are relevant to a judicial comparison of charged patterns in applying the Russotti test to Basciano's double jeopardy challenge.

### (4) The *Russotti* Factors Do Not Support a Preponderance Finding of Distinct Patterns

The government does not directly contend that it can carry its preponderance burden of demonstrating a distinct pattern of racketeering in 05-cr-060(S-9) if all predicates alleged therein are considered in applying the Russotti test. Nevertheless, we review those factors to explain why the government, in fact, fails to carry its burden.

### (a) Timing

Count One of 05-cr-060(S-9) alleges that Basciano, his named co-defendants, and unnamed others conducted the affairs of the Bonanno crime family through a pattern of

40

racketeering from February 1997 to June 2005, a period of eight years. Count One of 03-cr-929(S-8) alleged that Basciano and unnamed others conducted the affairs of the Bonanno crime family through a pattern of racketeering from January 1979 to November 2004, a period of more than twenty-five years. A partial overlap of nearly eight years does not necessarily signal identical patterns. See generally United States v. Langella, 804 F.2d at 190 (noting partial overlap where indictment charged six-year range of activity entirely subsumed within twenty-year range charged in earlier indictment). It is nevertheless noteworthy that, although the pattern of racketeering charged in 03-cr-929(S-8) allegedly existed as early as 1979, the predicate acts cited as evidence of this pattern all occurred between 2000 and 2004, well within the time frame of the 05-cr-060(S-9) predicates, which occurred between 1997 and 2005. Thus, the timing of the predicates does not permit a preponderance finding that the 05-cr-060(S-9) pattern is narrower and distinct from the expansive pattern at issue in 03-cr-929(S-8).

### (b)    Participants

Basciano was the only defendant named in the 03-cr-929(S-8) substantive count of racketeering, although he is alleged to have acted with unnamed "others . . . employed by and associated with the Bonanno family" in committing the crime. 03-cr-929(S-8) ¶ 14. By contrast, in the substantive racketeering count of 05-cr-060(S-9), Basciano is charged together with two co-defendants, Anthony Indelicato and Anthony Aiello, as well as unnamed "others . . . employed by and associated with the Bonanno family." 05-cr-060(S-9)

41

¶ 25.[18]

In considering whether this difference in named participants might signal distinct patterns of racketeering, we heed the Supreme Court's admonition that the "exaltation of form over substance is to be avoided" in reviewing double jeopardy challenges. United States v. DiFrancesco, 449 U.S. 117, 142 (1980). We therefore adopt the Sixth Circuit's approach to review of the participant prong of the Russotti test, asking "not whether the same persons were actually charged" in the two indictments, "but rather whether the same persons were involved in the activities charged." United States v. Wheeler, 535 F.3d 446, 451 (6th Cir. 2008). Such an approach comports with our responsibility to examine the entire record of proceedings on double jeopardy review. See United States v. Olmeda, 461 F.3d at 282.

Here, we note that when the two substantive racketeering counts are reviewed together, a number of overlapping participants can be discerned. Specifically, because the conspiracy to murder and actual murder of Frank Santoro is a predicate act in both indictments – charged (and proved) against Basciano and unnamed "others" in 03-cr-929(S-8) ¶ 15, and charged against Indelicato and unnamed "others" in 05-cr-060(S-9) ¶¶ 30-31 – Basciano and Indelicato are reasonably viewed as common participants in both the homicidal act and the patterns of racketeering charged by reference thereto. The same conclusion obtains with respect to the marijuana conspiracy count proved against Basciano and unnamed

---

[18] The defendants charged with Basciano in the substantive racketeering count of 05-cr-060 varied over time, with Aiello, Vincenzo Masi, Frank Esposito, and Eugene Gallo charged in the 05-cr-060(S-4) indictment, and Indelicato added in the 05-cr-060(S-7) indictment.

others in 03-cr-929(S-8) ¶ 26 and charged against Indelicato and unnamed others in 05-cr-060(S-9) ¶ 46.[19] Nothing in the record indicates that Basciano's commission of the Santoro murder and participation in the charged marijuana conspiracy were part of the broad pattern of operation of the Bonanno family, but that Indelicato's commission of these same predicates was part of some different and narrower pattern. Indeed, the government does not even make this argument.

We note further that testimony at Basciano's trials on the 03-cr-929(S-5) and (S-8) indictments reveals other common participants in the activities at issue in the two charged patterns of racketeering. Notably, Bonanno confederate Dominick Cicale testified that both he and Anthony Donato participated in the Santoro murder predicate common to the two indictments. Cicale was also a confessed participant in the marijuana conspiracy common to the two indictments, the Martino and Vitale murder solicitations and illegal sports betting predicates alleged in 03-cr-929(S-8), and the Pizzolo murder and DeFilippo and Bonelli murder conspiracy predicates alleged in 05-cr-060(S-9).[20]

---

[19] Although the indictments ascribe somewhat different time frames to this conspiracy, a review of the 03-cr-929(S-8) trial record confirms that Basciano and Indelicato were co-conspirators in a common drug scheme.

[20] In Basciano's racketeering conspiracy trial under 03-cr-929(S-5), the government argued to the jury that a host of murders in which Cicale jointly participated with Basciano – some charged as 03-cr-929(S-8) predicates and some charged as 05-cr-060(S-9) predicates – were evidence of a single expansive pattern of racketeering. Indeed, the government argued that the Martino solicitation – an 03-cr-929(S-8) predicate – and the Bonelli murder conspiracy – an 05-cr-060(S-9) predicate – by themselves evidenced a pattern. It argued as follows:

Bonanno boss Joseph Massino was also allegedly involved in the racketeering activity

---

Vincent Basciano and Dominic[k] Cicale were very much partners in crime.

After all, the only two murders that Cicale committed while a part of the Bonanno family, he did it under the orders of Vincent Basciano. Frank Santoro, who was killed on February 15th, '01, and Randolph Pizzolo, who was killed at the end of 2004.

Apart from the murders that were actually carried out, every time Basciano plotted to kill somebody, he went to Cicale for help. When Basciano wanted to kill Dominic Martino, a Genovese associate, who had punched Anthony Donato, a made member in Basciano's crew, he asked Dominic[k] Cicale for help.

When Basciano wanted to kill Joseph Bo[n]elli, another Genovese associate, he wanted to kill him because he had disrespected the Bonanno Family . . . while shooting up either a house or a restaurant, <u>and by the way, just with these two conspiracies to murder alone, you have a pattern of Basciano not countenancing an insult and raising it to murder right away.</u>

When Basciano wanted to kill Sal Vitale, the underboss of the Bonanno Family, because he suspected him of being a cooperating witness, he asked Dominic[k] Cicale.

Even when the defendant wanted to kill Patrick DeFilippo, his codefendant in this case, Basciano asked for help from Dominic[k] Cicale.

Trial Tr. at 9440-41, Aug. 26, 2006 (emphasis added). While the 03-cr-929(S-5) conspiracy prosecution did not put Basciano in jeopardy for substantive racketeering, the conspiracy trial transcript is part of the totality of the evidence useful to determining whether the government has demonstrated that it is more likely than not that the predicates alleged in the two substantive racketeering counts charge distinct patterns of racketeering. Plainly, the quoted summation argument does not support that contention. Instead, it strongly signals that the 05-cr-060(S-9) predicates are part of the expansive pattern of racketeering through which Basciano has continued to conduct the affairs of the Bonanno crime family without interruption by his November 2004 incarceration.

44

charged in the two indictments. For example, Cicale testified that Basciano solicited Massino's approval for the Martino murder predicate charged in 03-cr-929(S-8) and for the DeFilippo murder predicate charged in 05-cr-060(S-9).[21]

In sum, the participant factor in the Russotti test offers no support for the government's argument of a distinct 05-cr-060(S-9) pattern of racketeering. To the contrary, it indicates that the predicate conduct there alleged is simply a continuation of the expansive pattern of racketeering proved in securing Basciano's 03-cr-929(S-8) conviction.

### (c) Statutory Offenses

The statutory offenses charged as predicate acts in the two indictments support the same conclusion. Both indictments charge conspiracy to murder and solicitation to murder in violation of N.Y. Penal Law §§ 125.25, 105.15, 100.10, and 20.00, as well as conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Where racketeering activity consists of similar offenses, distinct patterns are not foreclosed, but their likelihood diminishes. As the Sixth Circuit has explained, a showing that the same statutory offenses "were committed under different factual circumstances only tends to prove that the pattern of activity was more widespread than the initial indictment originally conveyed. It does not tend to prove a separate pattern of conduct." United States v. Wheeler, 535 F.3d at 454; see also United States v. Langella, 804 F.2d at 190 (comparing "types of statutory offenses" alleged in two

---

[21] Whether or not Massino was a culpable participant in these crimes, the fact that Basciano solicited his approval with respect to each makes it more rather than less likely that they are parts of the common, expansive pattern prosecuted in 03-cr-929(S-8).

indictments).

In this case, the pattern of racketeering at issue in 03-cr-929(S-8) was always understood to be very broad, reaching a host of crimes committed on behalf of an enterprise described by the government in its summation as a virtual "Army of criminals." Trial Tr. at 4400, July 26, 2007. Thus, to the extent the indictments include diverse crimes, with the 03-cr-929(S-8) indictment charging the operation of illegal gambling businesses in violation of N.Y. Penal Law §§ 225.10(1), 225.05, and 20.00 and 18 U.S.C. § 1955, and the 05-cr-060(S-9) indictment charging extortions in violation of 18 U.S.C. § 894(a)(1), (2) and a robbery conspiracy in violation of 18 U.S.C. § 1951(a), such offenses are entirely consistent with a single widespread pattern of criminal conduct, rather than with one widespread and one narrow pattern.[22]

(d)     Nature and Scope

(i)     The Pattern Charged in 05-cr-060(S-9) Is Not Animated by a Distinct Homicidal Motive

The district court recognized the overlap in offenses between the two indictments. Nevertheless, at least with respect to the murder-related predicates in the pending 05-cr-060(S-9) indictment, it determined that "the purposes of these acts differed" from the murders in the 03-cr-929(S-8) case. United States v. Basciano, 2008 WL 4596215, at *5.

---

[22] Indeed, the racketeering conspiracy charged under 03-cr-929(S-5) alleged extortion as well as gambling crimes as part of the day-to-day criminal activities of the Bonanno crime family. See 03-cr-929(S-5) ¶¶ 16-17, 22-28.

46

We review this conclusion in considering the nature and scope of the activity the government seeks to punish with successive racketeering prosecutions. This is the "most significant factor" in determining whether the patterns are distinct. United States v. Russotti, 717 F.2d at 34.

In concluding that the substantive racketeering counts in 03-cr-929(S-8) and 05-cr-060(S-9) involved different patterns, the district court observed that the Pizzolo murder and the solicitation to murder AUSA Andres

> were committed not only in furtherance of the broader Bonanno enterprise, but in support of the more specific objective of exerting and preserving Bonanno authority once its leadership fell vulnerable to law enforcement. This theme is absent from the murder, conspiracy to murder, and solicitation to murder allegations in the [03-cr-929(S-8)] Indictment.

United States v. Basciano, 2008 WL 4596215, at *5. For reasons already discussed, we do not think the relevant pattern of racketeering can be identified simply by reference to the predicate acts charged to Basciano in 05-cr-060(S-9), much less to only two such acts. See supra Part II.D.2.c(3). In any event, upon review of the record, we cannot agree that the 2004 arrests of Basciano and other Bonanno members prompted a new motive for murder.

In the opening sentences of its 03-cr-929(S-8) summation, the government made clear that Basciano was a relentless murderer, "a man who thinks killing is a simple necessity of mob life." Trial Tr. at 4400, July 26, 2007; see also id. at 4410-11 (observing that "Basciano personifies the mob," possessing "the two skills that the mob values the most. He was an earner . . . and he was a shooter"). More to the point for purposes of our double jeopardy

47

review, the government characterized Basciano's homicidal objectives as virtually all-inclusive:

> As a member of the Bonanno organized crime family the defendant believed that killing was just another cost of doing the organized crime business. Killing to show power, killing to demand respect, and killing to punish disrespect. . . .Vincent Basciano is a man who thinks . . . [t]hat you should kill to make examples. That you should kill to enforce respect. And that you should kill to resolve disputes.

Id. at 4400.

At the 03-cr-929(S-8) trial, the government argued that the Pizzolo murder – one of the 05-cr-060(S-9) predicates singled out by the district court as evidence of a distinct pattern – fit comfortably within Basciano's longstanding, broad homicidal purpose. Citing testimony elicited from Dominick Cicale about the murder, the government argued as follows:

> Vincent Basciano is the same man who punishes disrespect. He makes examples by killing people. You have heard that when Vincent Basciano was the acting boss he ordered the murder of Randy Pizzolo. Dominic[k] Cicale testified here. I will quote it from page 1221 of the transcript.
>
> "QUESTION: Did Basciano tell you why he, Basciano, wanted Pizzolo killed?
>
> ANSWER: Vinnie Basciano was going to show Joe Cammarano Jr. just to make a point out of it, and let Joe Cammarano Jr. know that Vinnie Basciano will not tolerate people acting out of line.
>
> QUESTION: What, if anything, did the defendant say about the effect of killing Randolph Pizzolo in the crime family?
>
> ANSWER: It[] would show the crime family that Vinnie Basciano doesn't play around."

Id. at 4410.

In continuing its argument, the government made plain that no different purpose

48

animated the murder predicates charged in the 03-cr-929(S-8) indictment:

> As part of the Bonnano family Vincent Basciano enforced respect and eliminated threats to both himself and to the enterprise, including by committing the crimes that are charged in this indictment by murdering Frank Santoro, who Basciano had heard wanted to kidnap his son. By seeking to murder Donnie Martino. . . . By seeking to murder Salvatore Vitale, he [i.e., Vitale] posed the biggest threat to the Bonnano family by cooperating with the government and telling the government about all of the Bonnano family's crimes.

Id. at 4411. As the last sentence illustrates, the government plainly argued that, even before Basciano's arrest, he murdered to "eliminate threats to both himself and to the enterprise," whether from rival mobsters or from law enforcement investigations. Thus, the record cannot support a preponderance finding that the 03-cr-929(S-8) pattern of racketeering did not include murders committed with the "specific objective of exerting and preserving Bonanno authority" whenever "its leadership fell vulnerable to law enforcement." United States v. Basciano, 2008 WL 4596215, at *5. Quite the contrary, the government specifically argued at the 03-cr-929(S-8) trial that this objective routinely animated enterprise murders:

> We're now going to talk about the solicitation to kill Salvatore Vitale.
>
> What have you learned in this trial about the Bonanno Family and its view of cooperating witnesses? You've learned that cooperating witnesses, they threaten the very existence of the Bonanno Family and its members. . . .
>
> You heard repeated examples during this trial of members of the Bonanno Family enterprise protecting themselves and the family, by eliminating or trying to eliminate suspected cooperators.
>
> . . . Why was Robert Perrino killed? . . . There was a major investigation from the state, that he was going to send everybody else to jail. . . .
>
> Salvatore Vitale also told you about the attempted murder of someone named

49

> Tony Lamberti. Tony Lamberti was suspected by Joseph Massino of cooperating against Joseph Massino in his labor racketeering trial. Mr. Vitale told you why Mr. Massino wanted Lamberti killed, and he said, "Because he could implicate Mr. Massino in the wrongdoings of that union."
>
> Richard Cantarella explained to you why he had wanted Rick Mazzio killed. He was concerned [that] Rick Mazzio was cooperating. . . .
>
> Vincent Basciano himself has realized the dangers of cooperating witnesses. What did he say about this? He said during the December 21 meeting with James Tartaglione, ["]The end of the day, we're all gonna be in jail.["]
>
> During that December 21 recording, . . . Urso, Basciano, and Tartaglione are all discussing concerns that they have and the Bonanno Family has about the fact that Salvatore Vitale is cooperating with the government. They talk about the fact that they fear that many members of the Bonanno Family are going to be arrested because of Salvatore Vitale.
>
> You learned from the testimony of Dominic[k] Cicale that following the arrest in early 2004 of many high-ranking members and other members of the Bonanno Family . . . that Vincent Basciano was paranoid, he was worried that there were more cooperating witnesses in the family.

Trial Tr. at 4500-02.

The argument describes all these homicidal events as part of a whole, in which self-preservation against both mob rivals and law enforcement challenges was a Bonanno (and Basciano) object before as well as after any 2004 arrests. Indeed, as we have already noted, the 03-cr-929(S-8) and 05-cr-060(S-9) indictments use identical language in alleging that Bonanno members regularly "engaged in conduct designed to prevent government" disruption of their criminal activities, including "murdering persons . . . perceived as potential witnesses against members and associates of the enterprise." 03-cr-929(S-8) ¶ 11; 05-cr-060(S-9) ¶ 10.

Basciano's solicitation of the murder of an Assistant United States Attorney might well be understood to reflect a more aggressive defense of the Bonanno crime family than other homicidal offenses charged in the 03-cr-929(S-8) or 05-cr-060(S-9) indictments. This solicitation did not aim simply to enforce discipline and loyalty <u>within</u> the criminal enterprise, but also to reach <u>outside</u> organized crime to make law enforcement officials who proposed to disrupt continuing mob operations pay with their lives. The gravity of such alleged criminal conduct cannot be overstated, and it warrants prosecution to the fullest extent of the law. <u>See, e.g.</u>, N.Y. Penal Law §§ 125.25, 100.10 (proscribing solicitation to murder); <u>cf.</u> 18 U.S.C § 111(a)(1) (proscribing, <u>inter alia</u>, intimidation of or interference with federal official while officer is "engaged in or on account of the performance of official duties").[23] We do not here decide whether this predicate might properly be charged as part of a different pattern from that at issue in 03-cr-929(S-8). We note only that, in this case, where the other murders charged in 05-cr-060(S-9) fall squarely within the expansive 03-cr-929(S-8) pattern of racketeering already proved to continue after Basciano's 2004 arrest, the Andres predicate cannot, by itself, constitute a distinct pattern of racketeering. <u>See</u> 18 U.S.C. § 1961(5) (requiring proof of at least two predicate acts to establish pattern).

> (ii)  <u>The Totality of Predicates Indicates that the Patterns at Issue in 03-cr-929(S-8) and 05-cr-060(S-9) Are the Same</u>

---

[23] <u>See</u> <u>United States v. Hertular</u>, 562 F.3d 433, 440 (2d Cir. 2009) (observing that application of § 111 to threats "requires some proof of the assailant's present ability to inflict injury giving rise to an objectively reasonable apprehension of immediate harm").

51

Our conclusion that the nature and scope of the criminal activity at issue in Count One of 05-cr-060(S-9) is not defined by a distinct purpose acquired "in the wake of [Basciano's] rise to the top as acting boss [of the Family], his subsequent arrest, and his ongoing incarceration," United States v. Basciano, 2008 WL 4596215, at *6, is only reinforced when Basciano's pending murder predicates are viewed together with all others alleged in the pending substantive racketeering charge.

When all predicates are considered, the pattern of racketeering activity that the government seeks to punish in Count One of 05-cr-060(S-9) dates at least as far back as a February 1997 robbery and continues through a 2005 attempted larceny. In the interim, the pattern manifests itself through diverse crimes: a marijuana distribution conspiracy in 2000 and 2001; the collection of extortionate extensions of credit between 2003 and 2005; and a number of murders, murder conspiracies, and solicitations to murder between 2001 and 2004. Although Basciano is only named in predicate acts occurring between August 2003 and June 2005, the record confirms his involvement in earlier predicates constituting the charged pattern, notably, the 2000-01 marijuana conspiracy and the 2001 Santoro murder. Taken together, these predicates not only evidence that Basciano is charged with participation in a pattern of conduct broader in scope than that identified by the district court, they demonstrate that the charged activity is really only a continuation of the expansive pattern proved to convict Basciano of substantive racketeering in 03-cr-929(S-8). Indeed, the government's proof of some of the 05-cr-060(S-9) predicates at Basciano's 03-cr-929(S-8) trial demonstrated his ability to continue to conduct the affairs of the enterprise

52

through the single pattern even after his 2004 arrest.

Thus, whether or not the government might have pursued narrower, distinct patterns of racketeering through which Basciano conducted the affairs of the Bonanno crime family, once it elected to prosecute him under the expansive theory charged in 03-cr-929(S-8), and to offer proof of a number of the 05-cr-060(S-9) predicates to complete the story of that crime, it could not seriously contend that it was more likely than not that the pattern of racketeering alleged in 05-cr-060(S-9) was distinct from that at issue in the 03-cr-929(S-8) prosecution.

### (e)  Location

The final Russotti factor, location, warrants little discussion, as the parties agree that the criminal activities charged in both 03-cr-929(S-8) and 05-cr-060(S-9) took place in the New York metropolitan area. Thus, this factor lends no support to the government's argument in favor of distinct patterns.

In sum, on consideration of Basciano's double jeopardy challenge to his pending prosecution for substantive racketeering, we reject the government's contention that the pattern at issue in the pending substantive racketeering count is properly identified only by reference to the predicate acts charged against Basciano. On consideration of all predicates charged by the grand jury as part of the pattern alleged in Count One of 05-cr-060(S-9), as well as the totality of circumstances relevant to Basciano's earlier substantive racketeering prosecution under 03-cr-929(S-8), we conclude that a reasonable person would view the pattern of racketeering at issue in the pending charge as part of the same pattern at issue in

53

the prior charge. The government having failed to demonstrate the patterns' distinctness by a preponderance of the evidence and having conceded that the cases involve the same enterprise, we conclude that Basciano's prosecution for substantive racketeering, as alleged in Count One of 05-cr-060(S-9), is barred by double jeopardy. We reverse the district court's contrary decision, and we remand for dismissal of this charge.

### E.    Denial of Reconsideration

Basciano's challenge to the denial of his motion for reconsideration of his double jeopardy challenges warrants little discussion. Basciano directed this motion "principally at the Court's ruling with respect to Count One" of 05-cr-060(S-9), i.e., the substantive racketeering charge. Def.'s Mem. in Supp. of Mot. for Recons. at 1. Because we reverse the denial of Basciano's motion to dismiss this charge, we need not reach his challenge to the denial of his motion to reconsider as to this count. As for Counts Three and Nine, we have already explained why we independently conclude that Basciano's double jeopardy challenge to these charges lacks merit. It necessarily follows that we identify no abuse of discretion in the district court's refusal to reconsider its similar rejection of this challenge. See Universal Church v. Geltzer, 463 F.3d 218, 228 (2d Cir. 2006).

## III.    Conclusion

To summarize, we conclude as follows:

(1) Basciano's double jeopardy challenge to pending charges of conspiring to murder in aid of racketeering, see 18 U.S.C. § 1959(a)(5), in light of his prior racketeering conspiracy conviction, see id. § 1962(d), is governed by the same-elements test articulated

54

in <u>Blockburger v. United States</u>, 284 U.S. at 304, and reaffirmed in <u>United States v. Dixon</u>, 509 U.S. at 696, 704. Under that test, Basciano's double jeopardy challenge fails because the § 1959(a)(5) charges demand proof of different elements from those required to secure his § 1962(d) conviction, and vice versa. We therefore affirm the district court's denial of dismissal on these counts.

(2) Double jeopardy requires dismissal of substantive racketeering Count One of Indictment 05-cr-060(S-9) against Basciano because the totality of the evidence demonstrates that the enterprise and pattern at issue in that charge are the same as those proved to secure Basciano's substantive racketeering conviction under Indictment 03-cr-929(S-8). Where, as in Count One of 05-cr-060(S-9), a grand jury has charged a pattern consisting of diverse predicate acts attributed to a number of co-defendants, a court properly considers all predicates in identifying the relevant pattern, not simply those charged to a particular defendant. We therefore reverse the district court's denial of Basciano's double jeopardy challenge to Count One, and we remand with directions to dismiss this count.

AFFIRMED in part, REVERSED in part, and REMANDED.