REENA RAGGI, Circuit Judge,
joined by DENNIS JACOBS, JOSÉ A. CABRANES, and DEBRA ANN LIVINGSTON, Circuit Judges,
dissenting from the denial of rehearing en banc:
Since Morrison v. National Australia Bank Ltd., 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010) (“Morrison”), courts in this circuit and around the nation uniformly have held that the Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. § 1961 et seq., does not apply extraterritorially. These courts have sometimes differed in how they determined whether a particular RICO application was domestic or extraterritorial, but their underlying assumption has been consistent: “RICO is silent as to any extraterritorial application” and, therefore, “it has none.” Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 33 (2d Cir.2010) (“Norex ”) (internal quotation marks omitted).[1]
*131 In this civil case, a panel of the court untethers RICO from its mooring on United States shores and concludes, for the first time, that the statute reaches overseas — even to a foreign enterprise conducted through an essentially foreign pattern of racketeering — so long as one predicate act is alleged that references conduct that could be prosecuted under a criminal statute that itself reaches extra-territorially. See European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 136-37. (2d Cir.2014) (“RJR Nabisco ”).[2] That same panel concludes that whether a RICO claim is domestic or extraterritorial depends 'not on the locus of the enterprise or the pattern of racketeering (or on some relationship between the two), but instead on the location of particular predicate acts. See id. at 140-41. In so holding, the panel rejects the district court’s determination that RICO’s focus is the enterprise, that the locus of the enterprise determines whether RICO is being applied domestically or extraterritorially, and that RICO has no extraterritorial application to foreign enterprises. See European Cmty. v. RJR Nabisco, Inc., No. 02 Civ. 5771(NGG), 2011 WL 843957, at *4-7 (E.D.N.Y. Mar. 8, 2011).
RJR Nabisco has moved for this court to rehear the case en banc. I vote to grant that review because, like a number of my colleagues, I think the panel’s treatment of RICO’s extraterritorial application conflicts with controlling precedent, specifically, (1) the Supreme Court’s holding in Morrison, which mandates a presumption against the extraterritorial application of United States statutes unless Congress clearly expresses an affirmative intent to have a statute reach abroad; and (2) our holding in Norex (relying on Morrison) that RICO does not apply extraterritorially even though some of its predicate acts are crimes that could be prosecuted extra-territorially.
My concern with the panel’s reliance on individual predicate acts to support RICO’s extraterritorial reach extends also to its reliance on predicate acts to determine when RICO is being applied domes *132 tically and extraterritorially. Morrison used the “focus” of a statute to determine its application. 561 U.S. at 266, 130 S.Ct. 2869. Precedent emphasizes that RICO’s “focus” is not the alleged predicate acts, but the relationship between a pattern of racketeering (demonstrated by predicate acts) and an identified enterprise. See, e.g., United States v. Basciano, 599 F.3d 184, 205-06 (2d Cir.2010); see also United States v. Chao Fan Xu, 706 F.3d 965, 975 (9th Cir.2013) (collecting cases identifying either “enterprise” or “pattern of racketeering” as RICO’s focus). Nor can the RJR Nabisco panel suggest otherwise by characterizing RICO as an aggravating statute that simply adds new consequences to the predicate offenses. See RJR Nabisco, 764 F.3d at 135. That premise, from which the rest of the panel’s analysis flows, is also at odds with precedent. Successive prosecutions for greater and lesser included offenses implicate double jeopardy. See Brown v. Ohio, 432 U.S. 161, 167-69, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). But prosecutions for both RICO and predicate acts of racketeering do not. See United States v. Basciano, 599 F.3d at 205-06.
In light of these concerns, this court needs to give further consideration to two issues: (1) whether RICO applies extraterritorially, and (2) the criteria for determining whether a RICO claim is domestic or extraterritorial. Insofar as a majority of the active members of the court decline to convene en banc for this purpose, I respectfully dissent.
1. The Extraterritoriality Holdings in Morrison and Norex
To explain how the panel decision conflicts with controlling extraterritoriality precedent — both generally, as stated by the Supreme Court in Morrison, and specifically, as applied to RICO by this court in Norex — it is necessary briefly to discuss that precedent.
In Morrison, the Supreme Court reaffirmed a strong presumption against the extraterritorial application of any United States statute “unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect.” 561 U.S. at 255, 130 S.Ct. 2869 (internal quotation marks omitted). Morrison found no such clear expression of affirmative intent in Section 10(b) of the Securities Exchange Act of 1934, even though the statute’s prohibition of fraud “in connection with the purchase or sale of any security” referenced means or instrumentalities of interstate commerce, which by definition includes commerce with foreign countries. See 15 U.S.C. § 78j(b); id. § 78c(a)(17). In so holding, the Supreme Court specifically rejected the “conduct” and “effects” tests developed by this court to “discern” when Congress would have wanted a statute, otherwise “silent as to ... extraterritorial application,” to reach abroad. See Morrison, 561 U.S. at 255-61, 130 S.Ct. 2869 (discussing and rejecting that approach in favor of application of presumption against extraterritoriality “in all cases”). To be sure, Morrison noted that the presumption against extraterritoriality is not a clear statement rule. In short, it does not demand that a statute expressly say “this law applies abroad”; “context can be consulted as well.” Id. at 265, 130 S.Ct. 2869.[3] But Morrison emphasized that, *133 whatever the purported indicator of extraterritoriality, it must clearly and affirmatively signal Congress’s intent for the statute to reach outside this country’s borders. See id. Statutory constructions that are merely “possible ... do not override the presumption against extraterritoriality.” Id. at 264, 130 S.Ct. 2869.[4]
As this court has long recognized, the “RICO statute is silent as to any extraterritorial application.” North South Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir.1996) (emphasis added); see also United States v. Chao Fan Xu, 706 F.3d at 974 (9th Cir.2013) (same). Nevertheless, before Morrison, we had borrowed the conduct and effects tests from our securities and antitrust jurisprudence to allow RICO to reach extraterritorially in some circumstances. See North South Fin. Corp. v. Al-Turki, 100 F.3d at 1051-52. In Norex, however, we acknowledged that Morrison abrogated these tests, mandating both a generally applicable presumption and “a bright-line rule: absent a clear Congressional expression of a statute’s extraterritorial application, a statute lacks extraterritorial reach.” Norex, 631 F.3d at 32. Applying this rule to RICO, Norex identified no clear expression of congressional intent for-extraterritorial application. Indeed, Norex reiterated this court’s earlier categorical conclusion that the RICO statute is “‘silent as to any extraterritorial application,’ ” id. (quoting North South Fin. Corp. v. Al-Turki, 100 F.3d at 1051, arid declining to treat statement as dictum ), and concluded therefrom that “ ‘it has none,’” id. (quoting Morrison, 561 U.S. at 255, 130 S.Ct. 2869).[5]
*134 Norex then proceeded to hold that Morrison defeated the argument that, just “because a number of RICO’s predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach.” Id. at 33. In so ruling, Norex cited to Morrison’s discussion of Section 30(b) of the Exchange Act, see 15 U.S.C. § 78dd(b) (stating that Act and attending rules and regulations “shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States ” unless he does so in violation of regulations promulgated “to prevent ... evasion” of Act (emphasis added)). The Solicitor General had argued that the exemption would have no function if the Act did not apply in the first instance to securities transactions abroad. See Morrison, 561 U.S. at 264, 130 S.Ct. 2869. While acknowledging that the urged construction was “possible,” the Supreme Court concluded that such a possibility was insufficient to overcome the presumption against extraterritoriality. See id. (observing that it would be “odd for Congress to indicate the extraterritorial application of the whole Exchange Act by means of a provision imposing a condition precedent to its application abroad” or by limiting “enabling regulations ... to those preventing ‘evasion’ of the Act, rather than all those preventing ‘violation,’ ” and concluding that provision was “directed at actions abroad that might conceal a domestic violation or might cause what would otherwise be a domestic violation to escape on a technicality”). Indeed, the Supreme Court ruled that, even when a statute clearly “provides for some extraterritorial application,” as in the case of Section 30(a), 15 U.S.C. § 78dd(a), “the presumption against extraterritoriality operates to limit that provision to its terms.” Morrison, 561 U.S. at 265, 130 S.Ct. 2869.[6]
Norex’s specific reference to this last quoted excerpt from Morrison, see 631 F.3d at 32, together with its reiteration of RICO’s silence “as to any extraterritorial application,” id. (internal quotation marks omitted), signal that the extraterritorial reach of RICO’s predicate acts must also be limited “to [their] terms.” The terms of the extraterritorial crimes identified as RICO predicates authorize extraterritorial jurisdiction for prosecutions under the referenced proscribing criminal statutes, not for RICO claims alleging such predicates.
To conclude otherwise, the RJR Nabisco panel must read Norex narrowly to hold only that the inclusion of extraterritorial crimes in RICO’s list of predicate acts does not clearly signal Congress’s intent for RICO to reach “extraterritorially in all of its applications.” RJR Nabisco, 764 F.3d at 136 (emphasis in original). The panel pronounces it error to interpret Norex to hold “that RICO can never have extraterritorial reach in any of its applications.” Id. (emphasis in original). Thus *135 freed from Norex’s categorical pronouncement that “RICO is silent as to any extraterritorial application,” 631 F.3d at 32 (internal quotation marks omitted; emphasis added), the panel concludes that Congress did indeed clearly express its affirmative intent to have RICO reach extraterritorially when a claim — including a civil claim— alleges a pattern of racketeering involving predicate acts proscribed by criminal statutes with extraterritorial reach: “By incorporating these [extraterritorially reaching criminal] statutes into RICO as predicate racketeering acts, Congress has clearly communicated its intention that RICO apply to extraterritorial conduct to the extent that extraterritorial violations of those statutes serve as the basis for RICO liability.” RJR Nabisco, 764 F.3d at 137. I am not persuaded by this analysis and, thus, think we need to rehear this case en banc.
First, the Norex decision is not so easily cabined as the RJR Nabisco panel suggests. The complaint in Norex alleged predicate acts of money laundering by United States citizens in amounts exceeding $10,000.[7] Such conduct, like the money laundering at issue in RJR Nabisco, is specifically proscribed extraterritorially. See 18 U.S.C. § 1956(a), (f). Thus, Norex’s rejection of RICO extraterritoriality is not factually distinguishable from this case so as to signal only a general rule not applicable when a plaintiff pleads extraterritorial crimes as RICO predicates.
Second, and in any ■ event, Norex and Morrison do not permit this court to locate a clear expression of RICO’s extraterritoriality in pleaded predicates that are themselves extraterritorial crimes. The RJR Nabisco panel justifies that conclusion by observing that certain RICO predicates reference crimes that apply only to extraterritorial conduct. See RJR Nabisco, 764 F.3d at 136 (citing 18 U.S.C. § 2332(a) (prohibiting killing United States national “while such national is outside the United States”), and id. § 2423(c) (prohibiting “engaging in illicit sexual conduct in foreign places”)). The panel finds it “hard to imagine why Congress would incorporate these statutes as RICO predicates if RICO could never have extraterritorial application.” Id. at 136 (emphasis in original). Morrison, however, effectively declined to recognize such speculative reasoning as a substitute for Congress’s clear expression of affirmative intent when it rejected the Solicitor General’s argument that an exception to extraterritoriality in the Exchange Act made sense only if the statute applied extraterritorially. See 561 U.S. at 263-65, 130 S.Ct. 2869.
In fact, it is not hard to imagine why Congress would have included exclusively extraterritorial crimes in the list of RICO predicates without necessarily intending to extend RICO’s own reach extraterritorially. Domestic enterprises can be conducted through patterns of racketeering manifested by foreign as well as domestic acts. For example, a domestic crime syndicate might be conducted through a pattern of racketeering characterized mostly by domestic drug trafficking and money laundering, but with its continuation enabled by the murder of an American rival trafficker while the rival was outside the United States. Congress could well have determined that prosecutors should be allowed to prove such an extraterritorial murder as a racketeering predicate in an essentially domestic pattern of racketeering to demonstrate the intended continuity of the pattern through which the domestic enterprise would be conducted. See gen *136 erally H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239-41, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (discussing relatedness and continuity requirements of racketeering pattern).
Similarly, a foreign terrorist organization might engage in a pattern of racketeering consisting primarily of attacks executed in the United States, but financed with funds collected abroad. See 18 U.S.C. § 2339C(a), (b)(2)(C)(ii). Congress could have determined that prosecutors seeking to prove the relationship of the essentially domestic pattern to the foreign enterprise, as well as the means for ensuring continuity, should be allowed to prove such criminal extraterritorial financing.[8]
What is not clear from the inclusion of extraterritorially reaching crimes in the list of RICO predicates, however, is Congress’s affirmative intent further to extend RICO’s reach to foreign enterprises conducted through essentially foreign patterns of racketeering whenever extraterritorial crimes are alleged predicate acts. The panel submits that such a construction best ensures that “a defendant associated with a foreign enterprise” is not permitted “to escape liability for conduct that indisputably violates a RICO predicate,” citing as an example the killing of a United States national abroad, conduct made criminal by 18 U.S.C. § 2332. RJR Nabisco, 764 F.3d at 138. The concern is unwarranted. The United States can always prosecute persons for such extraterritorial homicides directly under § 2332. Indeed, it has successfully done so. See, e.g., In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 107 (2d Cir.2008) (upholding, inter alia, convictions for conspiracy to murder U.S. nationals in violation of § 2332). Moreover, the maximum punishment a defendant would face under § 2332 — death—is more, not less, severe than the maximum life sentence he would face if convicted of violating RICO with a § 2332 predicate. Compare 18 U.S.C. § 2232, with id. § 1963(a).
Thus, I respectfully submit that it raises a false alarm to suggest that prosecutors will be thwarted in bringing terrorists to justice unless we recognize RICO to extend extraterritorially to foreign enterprises conducted through foreign patterns of racketeering upon the pleading of any extraterritorial-crime predicate. Rather, it is civil litigants, such as plaintiffs here, who need such a ruling to pursue treble damages in United States courts for foreign racketeering injuries.[9]
*137 It is particularly difficult, however, to locate a clear expression of affirmative congressional intent for civil RICO claims to reach extraterritorially in the inclusion of extraterritorial crimes in RICO’s list of predicates. By their terms, the listed extraterritorial statutes authorize only criminal proceedings, not private actions. Victims of such crimes may be awarded restitution as part of a defendant’s sentence or may be allowed to petition the government for shares of forfeited proceeds. See 18 U.S.C. §§ 3663, 3663A; 28 C.F.R. § 9.1 et seq. But the listed extraterritorial statutes — and specifically the money laundering and material support statutes here at issue — themselves afford private persons no civil causes of action. Thus, while the RJR Nabisco panel purports to be recognizing RICO extraterritoriality only to the extent “liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate,” RJR Nabisco, 764 F.3d at 136, it in fact moves RICO well beyond the referenced predicate in concluding that a plaintiff who pleads extraterritorial-crime predicates can pursue a civil RICO claim for treble damages, although Congress provided no civil claim in the predicate criminal statute.
Might Congress have approved such an extension of RICO if it had considered such a circumstance? Possibly. But Morrison does not permit courts to apply statutes extraterritorially by “divining what Congress would have wanted if it had thought of the situation before the court.” 561 U.S. at 261, 130 S.Ct. 2869. No more does it permit the possibility of such congressional intent to overcome the presumption against extraterritoriality. See id. at 264, 130 S.Ct. 2869. Only a clear expression of Congress’s affirmative intent that a statute reach extraterritorially can clear that hurdle. See id.; accord Norex, 631 F.3d at 32.
For the reasons stated, I do not think Morrison and Norex permit our court to identify such a clear expression of affirmative intent with respect to the civil RICO claim here at issue. Accordingly, the court should rehear this case en banc to ensure a RICO extraterritoriality determination consistent with these precedents.
2. The Panel Assigns RICO Predicates a Greater Role than Warranted Under RICO Jurisprudence
The panel’s decision to ground RICO’s extraterritorial reach in the pleading of certain predicate acts also raises concerns under RICO jurisprudence. It has long been understood that. the conduct proscribed by RJCO is not the individual predicate acts but, rather, the overall pattern of racketéering activity. See, e.g., United States v. Basciano, 599 F.3d at 205-06 (“[I]t is the pattern of racketeering activity, not the predicates, that is punished by a racketeering conviction.”); see generally Agency Holding Corp. v. Mailey-Duff & Assocs., 483 U.S. 143, 149, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (observing that “RICO is designed to remedy *138 injury caused by a pattern of racketeering”). More precisely, what RICO prohibits are specified interactions between an identified enterprise and a pattern of racketeering. See, e.g., United States v. Russotti, 717 F.2d 27, 33 (2d Cir.1983) (“[I]t is neither the enterprise standing alone nor the pattern of racketeering activity itself which RICO criminalizes. Rather, the combination of these two elements is the object of punishment under RICO.” (emphasis in original)). Thus, RICO’s focus is not on any particular alleged predicate act but on (1) whether such predicate acts as are proved demonstrate the requisite “pattern of racketeering,” a matter largely dependent on their relatedness and continuity, see H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 239-41, 109 S.Ct. 2893; accord United States v. Daidone, 471 F.3d 371, 374-76 (2d Cir.2006); and (2) whether that pattern or its proceeds are used to (a) “invest” in, (b) “acquire or maintain ... any interest in or control of,” or (c) “conduct or participate ... in the conduct of’ the alleged enterprise, 18 U.S.C. § 1962(a)-(c).
I respectfully submit that this precedent does not permit RICO to be construed as a statute that simply “adds new criminal and civil consequences to the predicate offenses.” RJR Nabisco, 764 F.3d at 135. That construction is further refuted by precedent permitting “a defendant to be prosecuted — either simultaneously or at separate times — for both substantive racketeering and the predicate crimes evidencing the pattern of racketeering.” United States v. Basciano, 599 F.3d at 205; cf. Brown v. Ohio, 432 U.S. at 167-69, 97 S.Ct. 2221 (holding that double jeopardy bars successive prosecutions for greater and lesser included offenses).
When the role assigned to predicate acts under our RICO jurisprudence is thus understood — not as the object of the statute, but as a means for satisfying its pattern element — it is difficult to identify a clear expression of affirmative intent for civil RICO claims to reach extraterritorially simply from Congress’s inclusion of some extraterritorially reaching crimes in the list of possible RICO predicates, even when pleaded as part of the pattern of racketeering.
That argument is defeated, in any event, by the fact that RICO does not require proof of every alleged predicate act or of any particular predicate acts. See United States v. Basciano, 599 F.3d at 206. The law demands only that a RICO plaintiff prove sufficient predicate acts (but not fewer than two) to demonstrate the required pattern of racketeering. See id. In short, a plaintiff alleging a pattern of racketeering evidenced by various RICO predicates — some applying extraterritorially, others applying domestically — might well carry his pattern burden without proving any of the alleged extraterritorial predicates that, under the panel’s formulation, are the singular basis for permitting a RICO claim to reach extraterritorially. It would be curious for Congress to locate a statute’s extraterritorial reach in an allegation that need not be proved. If, on the other hand, the panel intended to condition RICO’s extraterritorial reach on proof of the alleged extraterritorial — crime predicates — which is not apparent from its opinion — it departs even further from our RICO jurisprudence in requiring not simply proof of a pattern of racketeering, but proof of particular predicates.
Thus, to ensure consistency in the role our jurisprudence assigns to RICO predicate acts, the court should convene en banc to clarify that Congress’s identification of some extraterritorial crimes as RICO predicates does not clearly express an affirmative intent for civil RICO claims to *139 reach extraterritorially whenever a plaintiff alleges such crimes as predicate acts.
3. Determining RICO’s Domestic and Extraterritorial Application
This case warrants rehearing for yet a third reason: to clarify how courts should distinguish RICO’s domestic and extraterritorial applications. Before RJR Nabisco, the understanding that RICO does not apply extraterritorially required courts to determine whether a particular RICO claim was domestic or extraterritorial. That inquiry remains necessary after RJR Nabisco because the panel, in its effort to distinguish Norex, decides that RICO does not apply extraterritorially when the alleged predicates are not extraterritorial crimes. Without regard to the locus of the enterprise or pattern of racketeering, the panel rules that plaintiffs’ claim properly applied RICO extraterritorially to the extent it alleged extraterritorial-crime predicates, at the same time that the claim properly applied RICO domestically to the extent it alleged domestic-crime predicates occurring in the United States. This reliance on individual predicate acts to determine whether a RICO claim is domestic or extraterritorial is at odds with Morrison, Norex, and our RICO jurisprudence.
In Morrison, the Supreme Court concluded that a statute’s application is properly determined by its “focus,” identified by looking to “the objects of the statute’s solicitude.” 561 U.S. at 267, 130 S.Ct. 2869. Applying this standard to Section .10(b) of the Exchange Act, which prohibits manipulative or deceptive practices in connection with the purchase or sale of securities, Morrison concluded that the statute’s focus was not on deceptive conduct, but on the purchase or sale of securities in the United States. See id. (“Section 10(b) does not punish deceptive conduct, but only deceptive conduct ‘in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.’ ” (quoting 15 U.S.C. § 78j(b))). Thus, the Exchange Act — which the Court had already held did not apply extraterritorially — could not be applied domestically to challenge foreign purchases or sales of securities based on deceptive conduct in the United States. Domestic application required the purchase or sale of securities in this country. See id.
In Norex, this court cited Morrison to reject a claim that alleged predicate acts of racketeering committed within the United States — mail and wire fraud, money laundering, Hobbs Act and Travel Act violations, and bribery — allowed RICO to apply domestically to an international scheme to take over part of the Russian oil industry. See Norex, 631 F.3d at 31-32.
The RJR Nabisco panel follows neither Morrison nor Norex in determining whether plaintiffs’ claims here apply RICO extraterritorially or domestically. With no identification of RICO’s “focus,” as seemingly required by Morrison, the RJR Nabisco panel looks to predicate acts alone to determine RICO’s application, in seeming contravention of Norex. Thus, the panel concludes that plaintiffs’ claim permissibly applies RICO extraterritorially for those predicate acts occurring abroad (money laundering and support for terrorism), and permissibly applies RICO domestically for those predicate acts occurring in this country (wire fraud, money fraud, and Travel Act violations). See RJR Nabisco, 764 F.3d at 140-43. This novel approach— which makes individual predicates determinative of RICO’s application without regard to the locus of the overall pattern of racketeering or the enterprise — warrants en banc review for several reasons.
First, this court needs to clarify whether Morrison does indeed require courts to *140 look to RICO’s “focus” to determine its domestic or extraterritorial application.
Second, the court needs either to identify RICO’s “focus” or to resolve the tension between Norex and RJR Nabisco as to the role predicate acts can play in determining RICO’s application.
These matters raise significant challenges. Following Morrison, and before RJR Nabisco, courts had generally assumed that RICO’s domestic or extraterritorial application should be determined by reference to “the ‘focus’ of congressional concern” in enacting the statute. Morrison, 561 U.S. at 266, 130 S.Ct. 2869; see United States v. Chao Fan Xu, 706 F.3d at 975 (collecting cases). Norex’s citation to Morrison in its rejection of plaintiffs domestic application argument in that case is consistent with this assumption. See Norex, 631 F.3d at 32. Thus, the RJR Nabisco panel’s failure to identify RICO’s focus, or to explain why it did not need to do so to determine the statute’s application in this case, creates confusion in this circuit as to Morrison’s controlling effect. This court needs to clarify the matter en banc.
Further, courts that have applied Morrison’s “focus” standard to RICO have found the inquiry “far from clear-cut.” United States v. Chao Fan Xu, 706 F.3d at 975. “[T]wo camps” have emerged: one locating RICO’s focus in the “enterprise,” the other in the “pattern of racketeering.” Id. (collecting cases). The district court in this case joined the first camp based on the fact that RICO prohibits only racketeering activity connected in specified ways to an enterprise, which it thought paralleled Morrison’s construction of the Exchange Act to punish only frauds in connection with domestic securities transactions. See European Cmty. v. RJR Nabisco, Inc., 2011 WL 843957, at *5 (citing Morrison, 561 U.S. at 266-67, 130 S.Ct. 2869). By contrast, the Ninth Circuit joined the “pattern” camp, citing Supreme Court decisions stating that “the heart of any RICO complaint is the allegation of a pattern of racketeering,” Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. at 154, 107 S.Ct. 2759 (emphasis in original), and referencing “RICO’s key requirement of a pattern of racketeering,” H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 236, 109 S.Ct. 2893. See United States v. Chao Fan Xu, 706 F.3d at 976-77.[10]
In Norex, this court did not choose between “enterprise” and “pattern” but, *141 rather, considered both in concluding that a few predicate acts in the United States were insufficient to allow RICO to be applied domestically to a claim involving a foreign enterprise and an essentially foreign pattern of racketeering. See 631 F.3d at 32. But Norex’s treatment of the matter is so brief as to preclude a confident conclusion on the focus point. In any event, Norex does not specify whether enterprise and pattern should be viewed independently, conjunctively, or alternatively in determining RICO’s application.[11]
Where Norex is not ambiguous, however, is in its rejection of predicate acts as determinative of RICO’s application. This is evident from its affirmance of the dismissal of RICO claims despite allegations that domestic predicate acts were part of the pattern of racketeering. See 631 F.3d at 31. It is RJR Nabisco that confuses that point by relying exclusively on predicate acts to determine RICO’s application. That approach is not only at odds with Norex and Morrison, but also with our RICO jurisprudence, which as already discussed holds that the object of racketeering “is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts.” United States v. Pizzonia, 577 F.3d 455, 459 (2d Cir.2009); accord United States v. Basciano, 599 F.3d at 205-06; see also United States v. Russotti, 717 F.2d at 33.
Thus, if Morrison does, indeed, require RICO application to be determined by reference to the statute’s' focus, and if discrete predicate acts are not RICO’s focus, this court needs to clarify en banc how a court properly determines whether a RICO application is domestic or extraterritorial.
Accordingly, I respectfully dissent from the court’s decision not to rehear this case en banc to provide needed clarity as to both '(1) whether RICO applies extraterritorially, and (2) the criteria for determining whether a RICO claim is domestic or extraterritorial.

. See United States v. Chao Fan Xu, 706 F.3d 965, 974-75 (9th Cir.2013) (recognizing presumption that RICO does not apply extraterritorially); Hourani v. Mirtchev, 943 F.Supp.2d 159 (D.D.C.2013); In re LIBOR-Based Fin. Instruments Antitrust Litig., 935 F.Supp.2d 666 (S.D.N.Y.2013); Adhikari v. Daoud & Partners, No. 09 Civ. 1237, 2013 WL 4511354 (S.D.Tex. Aug. 23, 2013); Petroleos Mexicanos v. SK Eng’g & Const. Co., No. 12 Civ. *131 9070(LLS), 2013 WL 3936191 (S.D.N.Y. July 30, 2013); Republic of Iraq v. ABB AG, 920 F.Supp.2d 517 (S.D.N.Y.2013); Tymoshenko v. Firtash, No. 11 Civ. 2794(KMW), 2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013); Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc., 871 F.Supp.2d 933 (N.D.Cal.2012); Aluminum Bahrain B.S.C. v. Alcoa Inc., No. 8-299, 2012 WL 2093997 (W.D.Pa. June 11, 2012); Chevron Corp. v. Donziger, 871 F.Supp.2d 229 (S.D.N.Y.2012); Sorota v. Sosa, 842 F.Supp.2d 1345 (S.D.Fla.2012); In re Toyota Motor Corp., 785 F.Supp.2d 883 (C.D.Cal.2011); United States v. Philip Morris USA, Inc., 783 F.Supp.2d 23 (D.D.C.2011); Cedeno v. Intech Grp., Inc., 733 F.Supp.2d 471 (S.D.N.Y.2010).

. As summarized by the RJR Nabisco panel, the racketeering scheme here at issue involved a multi-step process beginning with the smuggling of narcotics into Europe by Colombian and Russian criminal organizations, which "laundered” their euro proceeds through money brokers. Those brokers then sold the euros at a discount to cigarette importers who used the money to purchase RJR's cigarettes from wholesalers. The complaint alleges that RJR directed and controlled this money-laundering scheme by, inter alia, concealing the identity of cigarette purchasers, shipping cigarettes through Panama to shield the transactions from scrutiny, and bribing Colombian border guards in order to allow its employees to enter the country illegally to receive payments for cigarettes and then to travel to Venezuela, from where funds were wired to RJR Nabisco accounts in the United States. See RJR Nabisco, 764 F.3d at 135. In addition to extraterritorially proscribed money laundering, see 18 U.S.C. § 1956(f), the complaint charges RJR Nabisco with the predicate extraterritorial crime of providing material support for terrorism insofar as some cigarettes acquired in the described scheme were sold in Iraq to or for the benefit of various terrorist groups. See Second Am. Compl. ¶¶ 75-83; 18 U.S.C. § 233913(d)(2).

. I understand this to mean statutory context, not legislative history, because if Congress's intent remains uncertain after all canons of construction are applied, see generally Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 116 (2d Cir.2007) (allowing consideration of legislative history only in those circumstances), Congress can hardly be said to have clearly expressed its affirmative intent for a statute to reach extraterritorially.

. In fact, Congress is generally explicit in stating its intent for a statute to reach extra-territorially. The money laundering and ma-' terial support predicates alleged here are proscribed by criminal statutes that explicitly provide for extraterritoriality. As to money laundering, Congress has stated,
There is extraterritorial jurisdiction over the conduct prohibited by this section if — • (1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involves funds or monetary instruments .of a value exceeding $10,000.-
18 U.S.C. § 1956(f). As to material support for terrorism, Congress has stated, "There is extraterritorial Federal jurisdiction over an offense under this section.” Id. § 2339B(d)(2).
Dozens of other statutes are similarly explicit. See, e.g., id. § 1596 (authorizing “extra-territorial jurisdiction” over any human trafficking offense under specified statutory sections if offender is United States national, permanent resident alien, or present in United States); 21 U.S.C. § 959 (stating that prohibition on manufacture or distribution of controlled substances with intent to import "is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States”).
The intended extraterritorial application of other statutes is made clear from context: they proscribe only conduct occurring outside this country. See 18 U.S.C. § 1119 (stating that United States national who "kills or attempts to kill a national of the United States while such national is outside the. United States but within the jurisdiction of another country” is subject to criminal penalties as if ’act had been committed within special maritime and territorial jurisdiction of United States); id. § 1204 (prohibiting retention of "child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights”).
In all these circumstances, courts need not' engage in "divining what Congress would have wanted if it had thought of the situation before the court,” an exercise prohibited by Morrison, 561 U.S. at 261, 130 S.Ct. 2869, because Congress has made its extraterritorial intent clear. The RICO statute, however, does not admit such a conclusion.

. Judge Hall, concurring in the denial of rehearing en banc, submits that this description of Norex is misleading because "Norex never said that RICO has no extraterritorial application.” Hall, J., Op. Concurring in Denial of Reh’g En Banc, ante at [131-32 n. 2], Perhaps not in haec verba. But I respectfully submit *134 that is the conclusion fairly derived from Norex’s (1) quotation of Morrison’s rule that " '[w]hen a statute gives no clear indication of an extraterritorial application, it has none,' " Norex, 631 F.3d at 32 (quoting Morrison, 561 U.S. at 255, 130 S.Ct. 2869), and (2) its immediately following reiteration that RICO " 'is silent as to any extraterritorial application,' " id. (quoting North South Fin. Corp. v. Al-Turki, 100 F.3d at 1051). Silence is hardly a clear indicator.

. By its terms, Section 30(a) expressly reaches certain extraterritorial securities transactions, notably, when the issuer has prescribed ties to the United States and the defendant broker or dealer acts in contravention of SEC rules and regulations. Thus, the Supreme Court’s treatment of Section 30(a) — limiting the extraterritorial reach of that provision to its terms— should not be conflated with its rejection of the argument that Section 30(b) only made sense if the Exchange Act applied extraterritorially. See Monison, 561 U.S. at 263-65, 130 S.Ct. 2869.

. See First Am. Compl. ¶¶5-11, 168-70, 182-234, 304-16, J.A. 5579-81, 5556-57, 5559-68, 5579-81, Norex Petroleum Ltd. v. Access Indus., Inc., No. 07-4553-cv (2d Cir. filed Jan. 9, 2008).

. This second hypothetical assumes that RICO can apply domestically to a foreign enterprise engaged in a pattern of racketeering within the United States. The law on this point is not settled, as discussed infra at [138— 41]. The point warrants our consideration en banc particularly if, as I explain in that same discussion, RICO’s domestic or extraterritorial application cannot be determined by reference to individual predicate acts, which are not the statute's focus. See Morrison, 561 U.S. at 267, 130 S.Ct. 2869; United States v. Basciano, 599 F.3d at 205-06.

. In focusing on terrorism hypotheticals, some of my colleagues reference the legislative objectives of the USA PATRIOT Act, which added certain extraterritorial terrorism crimes to RICO's list of predicates. See Hall, J., Op. Concurring in Denial of Reh'g En Banc, ante at [130-31]; Lynch, J., Op. Dissenting from Denial of Reh’g En Banc, post at [130-31]. For reasons discussed supra at [132 n. 3], I do not think Morrison admits consideration of such extra-textual sources in applying the presumption against extraterritoriality.
Furthermore, the cited references indicate only Congress’s intent to allow RICO to be used against terrorists. They say nothing about whether that application can be extraterritorial, as well as domestic. Indeed, the 9/11 terrorist attacks that prompted the USA PATRIOT Act involved murderous activity ■within the United States by a domestic cell of terrorists affiliated with a foreign organization.
*137 In any event, RJR Nabisco’s predicate-based analysis is not limited to terrorism crimes but reaches the range of extraterritorial crimes listed as RICO predicates. For example, Congress included in that list 18 U.S.C. § 2423(c) (prohibiting commercial sex abroad with persons younger than 18). Does that express its clear intent for RICO to apply extraterritorially to a bordello enterprise in Thailand that secures underage prostitutes for American travelers to that country? The mere possibility that Congress's intent could have reached that far is not enough to override the presumption against extraterritoriality. See Morrison, 561 U.S. at 264, 130 S.Ct. 2869. Such caution is all the more warranted when RJR Nabisco's reasoning is applied to a civil RICO claim, for reasons I now discuss in text.

. In United States v. Chao Fan Xu, the Ninth Circuit upheld the domestic application of RICO to defendants’ prosecution for scheming "to steal large sums of money from the Bank of China and to get away with it in the United States.” 706 F.3d at 979 (observing that immigration and bank fraud parts of pattern were inextricably linked so that without immigration fraud in United States, bank fraud in China would have been "a dangerous failure”). Thus, while defendants' "pattern of racketeering activity may have been conceived and planned overseas,” the court concluded that "it was executed and perpetuated in the United States,” allowing for domestic prosecution. Id.
Judge Lynch poses certain hypothetical that might also support RICO’s domestic application to foreign enterprises conducted through patterns of racketeering occurring .wholly (or at least mainly) in this country. See Lynch, J., Op. Dissenting from Denial of Reh’g En Banc, post at [131]. But if pattern, rather than enterprise (or enterprise in relation to pattern), is RICO's focus and, thus, determinative of its application, this court should say so en banc. In any event, a conclusion that RICO can apply domestically to a pattern of racketeering occurring mostly in the United States does not ineluctably lead to a conclusion that Congress intended for RICO to apply extraterritorially to a foreign enterprise conducted through an entirely foreign pattern of racketeering evidenced by predicates prohibited by extraterritorially reaching statutes-Judge Lynch’s third hypothetical. See id. at [131]. Certainly, that possibility warrants further careful consideration en banc.

. In its amicus filing, the United States urges that RICO’s focus is on both the enterprise and the pattern of racketeering, so that these elements can operate in the alternative to allow RICO to apply domestically if either the enterprise or the overall pattern of racketeering operates in the United States. See Br. of United States 7-20. The United States does not argue in favor of the RJR Nabisco panel’s use of individual predicate acts to determine RICO’s application.